

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-31-2006

# Turner v. Crawford Square Apt

Precedential or Non-Precedential: Precedential

Docket No. 05-1979

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Turner v. Crawford Square Apt" (2006). *2006 Decisions.* Paper 987.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/987

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1979
_____

DEANNA TURNER,

Appellant

v.

CRAWFORD SQUARE APARTMENTS III, L.P.;
MCCORMACK BARON MANAGEMENT SERVICES, INC.
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 04-cv-01243)
Honorable Gary L. Lancaster, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
March 6, 2006

BEFORE:  ROTH and GREENBERG, Circuit Judges, and
BUCKWALTER, District Judge*

(Filed May 31, 2006)
_____

Donald Driscoll
Evalynn B. Welling
Community Justice Project
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, Pa 15219

   Attorneys for Appellant

_____

*Honorable Ronald L. Buckwalter, Senior Judge of the United States
District Court for the Eastern District of Pennsylvania, sitting by
designation.

Paul R. Yagelski
Rothman Gordon, P.C.
Third Floor, Grant Building
Pittsburgh, Pa. 15219

   Attorneys for Appellees

_____

OPINION OF THE COURT

_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.


## I.  INTRODUCTION

This matter comes on before the court on appeal by plaintiff Deanna Turner from an order of the district court entered March 22, 2005, granting summary judgment in favor of Crawford Square Apartments III, L.P. ("Crawford Square") and McCormack Baron Management Services, Inc. ("McCormack Baron") (sometimes together called "defendants").  The district court concluded that the <u>Rooker-Feldman</u> doctrine barred Turner's complaint alleging violations of Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act" or "FHA").

On appeal, we first consider whether the district court erred in concluding that the <u>Rooker-Feldman</u> doctrine barred Turner's action, particularly in light of the Supreme Court's recent opinion in <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 125 S.Ct. 1517 (2005), decided after the district court decided this case.  As we shall explain, the <u>Rooker-Feldman</u> doctrine in certain limited circumstances deprives a district court of jurisdiction following a state-court adjudication in a related case.  In <u>Exxon Mobil</u> the Court clarified the scope of the <u>Rooker-Feldman</u> doctrine and made clear that courts have applied it beyond its appropriate boundaries.  If we conclude that application of the <u>Rooker-Feldman</u> doctrine does not bar Turner's action, we then must determine whether application of

2

principles of res judicata bars this action.[1]  For the reasons set forth below, we find that the <u>Rooker</u>-<u>Feldman</u> doctrine is not applicable in this case, but we will affirm the grant of summary judgment on res judicata grounds.

## II.  FACTUAL AND PROCEDURAL HISTORY

In December 1999, Turner and her two children moved into a rental housing development in Pittsburgh, Pennsylvania, owned by defendant-appellee Crawford Square and managed by defendant-appellee McCormack Baron.[2]  Turner asserts that she has been "fully and permanently disabled" since August 2000 when "her nervous system broke down," and "a hole had formed at the base of her spine," rendering her unable to work.  App. at 172.  In December 2000, Turner was delinquent in her rent and sought an accommodation from McCormack Baron allowing her to pay her rent late "until she could again obtain a regular source of income."  App. at 172.  According to Turner, McCormack Baron did not accommodate her or refer her to local social services agencies that could provide information on rental assistance programs, but, instead, commenced an eviction action in the state courts against her.  In point of fact, however, Crawford Square not McCormack Baron filed the eviction action which the Court of Common Pleas of Allegheny County ultimately entertained.[3]

---

[1]Defendants advanced res judicata as a defense in the district court and advance it here as an alternative basis for us to affirm the March 22, 2005 order.

[2]The relevant facts relating to this appeal are largely undisputed, but where there is disagreement we view the facts in the light most favorable to Turner and draw all reasonable inferences in her favor.  <u>See Reitz v. County of Bucks</u>, 125 F.3d 139, 143 (3d Cir. 1997).

[3]We note that Turner refers to Crawford Square and McCormack Baron interchangeably at various times.  Nevertheless her failure to identify precisely the parties does not hinder our efforts to adjudicate this appeal.  We also note that Crawford Square filed the action before a district justice and that it was successful there.  Turner then appealed to the Court of Common Pleas of Allegheny County in which the court granted a trial <u>de novo</u>.

While the eviction action was pending in state court, Turner continued to pay her rent late.  In August 2001, Turner learned of her eligibility for the federal section 8 rental assistance program.[4] Consequently, she applied for a section 8 voucher, and shortly thereafter was notified that she would be issued section 8 vouchers to subsidize future rent.  At around the same time, Turner also learned of an emergency shelter assistance program that the Urban League of Pittsburgh administered through which she believed she could obtain assistance to pay the back rent she still owed.

In October 2001, Turner proffered a section 8 voucher to McCormack Baron and notified it that she had an upcoming appointment with the Urban League to discuss assistance in paying past-due rent.  Turner claims that McCormack Baron asserted that it would not accept her voucher because she had been habitually late in making rental payments.

Contemporaneously with the state court proceedings, Turner filed a petition in bankruptcy which delayed the state proceedings until June 2003.[5]  At that time Turner filed a counterclaim against Crawford Square and a separate petition seeking an injunction prohibiting her eviction in the Court of Common Pleas of Allegheny County.  Turner's state counterclaim and petition together alleged that Crawford Square: (1) wrongfully failed "to refer [Turner] to the social services which would have prevented [her] inability to pay the rent due," app. at 25; (2) engaged in a "wrongful and discriminatory refusal to accept a [section 8] voucher for federally-subsidized rent issued to [Turner]," app. at 25; (3) failed to consider a reasonable accommodation that would have allowed her to pay her rent late; (4) violated the notice of termination provisions in the lease; (5) initiated a retaliatory eviction action after she complained to the local housing authority; and (6) committed a variety of unfair or deceptive acts in

---

[4]The federal section 8 rental assistance program was established under the United States Housing Act of 1937, 42 U.S.C. § 1437 et seq., and provides rent subsidies for low- and moderate-income participants so that they can afford to lease privately owned housing units.  See generally Truesdell v. Philadelphia Hous. Auth., 290 F.3d 159, 161-62 (3d Cir. 2002).

[5]The parties do not discuss Turner's bankruptcy petition, and, except to explain the delay in resolution of the controversy, it is not germane to this appeal.

4

violation of Pennsylvania law.

Notably, in the common pleas court, though Turner attributed her inability to pay her rent in a timely manner to her disability, she did not premise her allegation that there had been a "discriminatory" refusal of her section 8 vouchers based on her disability. Rather, she alleged that Crawford Square "had never accepted a Section 8 voucher on behalf of a current tenant initially approved for occupancy." App. at 101. Nor did Turner base any of her claims on the Fair Housing Act, 42 U.S.C. § 3601 et seq., which formed the basis of an unsuccessful complaint she filed with the United States Department of Housing and Urban Development ("HUD") charging defendants with housing discrimination.[6] Instead, Turner based her allegations in the state court on a "Regulatory Agreement" executed by Crawford Square and the Pennsylvania Housing Finance Agency, and a "Management Plan" executed by Crawford Square and McCormack Baron, pursuant to which Turner claimed rights as a third-party beneficiary.

On September 30, 2003, following a four-day trial, the court of common pleas found in favor of Crawford Square on its claims for eviction and damages, and ruled against Turner on her counterclaims. The court predicated its outcome on the merits of the controversy though the non-jury verdict by which it made its decision known merely stated the result the court reached. Turner was unsatisfied with the result and thus filed post-trial motions for relief which the court denied, explaining in its opinion that:

> I found that [Crawford Square] did not wrongfully refuse to accept her Section 8 rent voucher because it was not required to do so as long as past-due rent remained in arrears. I found that Crawford Square did properly refer Ms. Turner to a social service agency

---

[6]The FHA, among other things, makes it unlawful to discriminate in the sale, rental, or financing of dwellings because of race, color, religion, sex, familial status, national origin, or handicap. See 42 U.S.C. § 3604. The particulars of Turner's HUD complaint and the subsequent administrative proceedings are not important in our disposition of this appeal but we discuss them in our opinion on Turner's related appeal in an action she brought in the district court, Turner v. Secretary of the United States Department of Housing and Urban Development, No. 05-2169, challenging HUD's dismissal of her complaint.

(the Urban League), and that its alleged failure to refer Ms. Turner to other agencies with which she was in fact in contact was immaterial.

Finally, [Crawford Square] is correct that Pennsylvania does not recognize a cause of action or defense of 'retaliatory eviction' in this setting. In any event, I determined from the evidence at trial that Crawford Square's efforts to evict Ms. Turner were not taken in retaliation for any complaints she made, but instead were motivated solely by her failure to pay rent in a timely fashion.

App. at 21-22.

On August 18, 2004, Turner filed this action in the district court against defendants.[7] Turner alleged that defendants violated the Fair Housing Act and discriminated against her on account of her disability by failing to refer her to the section 8 program and by refusing her section 8 rent vouchers as defendants had done with "non-disabled families."[8] She also claimed that defendants violated

_____

[7]The record in the related appeal arising from the dismissal of a district court action Turner brought against HUD, see supra note 6, indicates that on August 12, 2004, HUD issued a Determination of No Reasonable Cause dismissing Turner's complaint under the doctrine of res judicata predicated on the outcome of the common pleas court action. Nevertheless, in its letter to Turner informing her of the dismissal, HUD indicated that its decision did not foreclose her from filing a civil action in federal district court.

[8]In her brief Turner indicates that while landlord "participation in the Section 8 program is generally voluntary . . . recipients of federal low income housing tax credit development assistance," a category that she indicates includes Crawford Square, must enter into agreements enforceable by tenants prohibiting "discrimination against a tenant . . . with a Section 8 voucher based on [her] status as a voucher holder." Appellant's br. at 3. Defendants do not disagree with this legal point, and thus the dispute in the state court did not concern the applicability of the section 8 program. Rather, it was based on whether Crawford Square wrongfully refused the section 8 rent voucher.

In state court Turner claimed that Crawford Square "had never

6

the FHA by failing "to make reasonable accommodations in rules, policies, practices or services." App. at 177. Defendants moved for summary judgment, arguing, <u>inter alia</u>, that the district court lacked subject matter jurisdiction under the <u>Rooker</u>-<u>Feldman</u> doctrine, the action was barred by the doctrine of res judicata, and the district court should abstain from entertaining the claim pursuant to <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.Ct. 746 (1971).

On March 22, 2005, the district court granted summary judgment in favor of defendants, concluding that in light of Turner's prior state court action, the <u>Rooker</u>-<u>Feldman</u> doctrine barred the subsequent federal action.[9] The district court explained:

> If the court were to assert subject-matter jurisdiction over this case, it would be ignoring the clear mandates of the <u>Rooker</u>-<u>Feldman</u> doctrine. To do so would be tantamount to reviewing the final decision of the Court of Common Pleas of Allegheny County . . . . Such action is barred by <u>Rooker</u>-<u>Feldman</u>, as the constitutional claims at issue in this case are inextricably intertwined with the state court's decision . . . . In addition, if the court were to grant [Turner] the relief she seeks, it would necessarily have to take action that would render the state court's decision ineffectual.

App. at 7. Turner then filed a timely notice of appeal. By this

―――――――――――――

accepted a tenant approved for Section 8 benefits for residency in one of its rental townhouse units at the time Ms. Turner tendered her Section 8 voucher for this purpose." App. at 101. Yet in her federal action she asserted that Crawford Square allowed vouchers for "non-disabled tenants" that were behind in rent but would not accept the voucher from her, conduct from which she infers a discriminatory motive. We cannot ascertain the reason for this inconsistency, though we do note that the state allegation was made "[u]pon information and belief" and that she filed the complaints in the state and federal courts at different times.

[9]The district court in its memorandum order granting defendants summary judgment indicated that "[a]s of December 22, 2004, the date on which defendants filed their motion for summary judgment, plaintiff was still in possession of her apartment on defendants' premises, and had not paid rent since September 2001." App. at 2 n.1.

opinion we adjudicate the appeal.


### III.  JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over Turner's complaint under 28 U.S.C. § 1331 and 42 U.S.C. § 3613, and we have jurisdiction over the appeal under 28 U.S.C. § 1291. Our review of the district court's application of the Rooker-Feldman doctrine is plenary.  See Parkview Assocs. P'ship v. City of Lebanon, 225 F.3d 321, 323-24 (3d Cir. 2000).


### IV.  DISCUSSION

1.      Rooker-Feldman Doctrine

The Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication.  The doctrine derives from the Supreme Court's opinions in Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483-84, 103 S.Ct. 1303, 1316 (1983).  In Exxon Mobil, the Court, however, emphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, __ U.S. __, __, 126 S. Ct. 1198, 1201 (2006) (discussing "narrowness" of Rooker-Feldman doctrine).  The Court in Exxon Mobil admonished that "the doctrine has sometimes been construed to extend far beyond the contours of the Rooker and Feldman cases." 544 U.S. at 283, 125 S.Ct. at 1521.

Here, the district court erred by applying the Rooker-Feldman doctrine "beyond the contours of the Rooker and Feldman cases," id., because Turner's action in the district court did not complain of injuries "caused by the state court judgment."  Id. at __, 125 S.Ct. at 1521-22.  Rather, Turner's complaint raised federal claims, grounded on the FHA, not caused by the state-court judgment but instead

8

attributable to defendants' alleged FHA violations that preceded the state-court judgment. Cf. Holt v. Lake County Bd. of Comm'rs, 408 F.3d 335, 336 (7th Cir. 2005) (plaintiff's action barred by Rooker-Feldman because "[plaintiff's] injury was caused by the state court judgments . . . [and] absent the state court's judgment . . . [plaintiff] would not have the injury he now seeks to redress").

Though Turner's district court complaint undoubtedly overlaps her adjudicated state-court claims, and is based on the same operative facts, this overlap does not mean that the Rooker-Feldman doctrine is applicable here. As the Court explained in Exxon Mobil, a district court is not divested of subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. See 544 U.S. at 292, 125 S.Ct. at 1527 ("If a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'") (quoting GASH Assocs. v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)). Therefore, the district court erred in holding that the Rooker-Feldman doctrine deprived it of subject-matter jurisdiction.

2.     Res Judicata

Although we reject the district court's stated grounds for granting summary judgment in favor of defendants, we nonetheless may affirm the district court's order granting summary judgment on other grounds. See Wittekamp v. Gulf & W., Inc., 991 F.2d 1137, 1143 (3d Cir. 1993). This approach is particularly appropriate in this case inasmuch as the Supreme Court in Exxon Mobil explained that the continuing vitality of a federal action filed after entry of state-court judgment often depends on state preclusion law. See 544 U.S. at 293, 125 S.Ct. at 1256-57. In this case the record provides an adequate basis for us to make a determination of whether the doctrine of res judicata is applicable. Therefore, we next will consider whether the doctrine of res judicata or claim preclusion bars Turner's action.[10]

---

[10]We note that the parties refer interchangeably to "res judicata" and "claim preclusion." In these circumstances, we will refer to "res judicata" in the same sense of claim preclusion. See Wade v. City of Pittsburgh, 765 F.2d 405, 408 (3d Cir. 1985).

In determining the applicability of principles of res judicata, we must give the same preclusive effect to the judgment in the common pleas court case that the courts in Pennsylvania, the state in which the judgment was entered, would give. See Lance v. Dennis, __ U.S. __, __, 126 S.Ct. 1198, 1202 (2006) ("Congress has directed federal courts to look principally to state law in deciding what effect to give state-court judgments."); see also Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1429 (3d Cir. 1994) (citing Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466, 102 S. Ct. 1883, 1889 (1982), and 28 U.S.C. § 1738)). The Supreme Court of Pennsylvania has explained that res judicata:

> bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. Res judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action.

Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995) (citation omitted) (emphasis added). For the doctrine of res judicata to prevail, Pennsylvania courts require that the two actions share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued. Bearoff v. Bearoff Bros., Inc., 327 A.2d 72, 74 (Pa. 1974) (citations omitted).

In this case, the parties dispute whether factors (1) and (2) are present but we hold that they are.[11] First, in both actions the thing

---

[11]Although Turner does not dispute the presence of factor (3), namely that both actions share identity of parties, we recognize that McCormack Baron was not a named party in the state court action, which Crawford Square alone filed against Turner. Nonetheless, the privity between Crawford Square and McCormack Baron requires a finding that the state court action and this action, in which Turner named both Crawford Square and McCormack Baron as defendants, share an identity of parties. "The doctrine of res judicata applies to and is binding, not only on actual parties to the litigation, but also to those who are in privity with them. A final valid judgment upon the merits by a

10

sued for is the same– Turner seeks to remain in her residence by obtaining injunctive relief that would, among other things, prevent her eviction.[12]  With respect to the second factor, this action shares the same cause of action as the previously adjudicated state claims. Contrary to Turner's contention that there is a new cause of action because, unlike the theories for her claims in the common pleas court, she based her claims in the district court on the FHA, Pennsylvania courts have held that the mere advancement of a different legal theory does not necessarily give rise to a different cause of action.  See McArdle v. Tronetti, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993).  As the court in McArdle explained:

> As to the identity of cause[s] of action, rather than resting upon the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims. . . .  [I]n determining whether a single cause of action is present one may consider the identity of the acts complained of, the demand for recovery, the identity of witnesses, documents, and

----

court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action."  Stevenson v. Silverman, 208 A.2d 786, 788 (Pa. 1965).  Indeed, Pennsylvania courts apply the doctrine of res judicata "to different parties where one is vicariously responsible for the conduct of another, such as principal and agent or master and servant."  Day v. Volkswagenwerk Aktiengesellschaft, 464 A.2d 1313, 1317 (Pa. Super. Ct. 1983) (citing Restatement (Second) of Judgments § 51 (1982)).  In Day, the court explained that "[i]n such cases [involving privity of parties] there is, in an important sense, a single claim."  464 A.2d at 1317.  Here, Turner concedes that McCormack Baron is Crawford Square's agent with respect to dealing with Crawford Square's tenants.  Therefore, both the state court action and this action share an identity of parties for purposes of the application of res judicata principles.

[12]We note that Turner premised her claim for damages in the state court proceedings on state law, namely the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 et seq. (1993), see app. at 105-06, while her claim for damages in this action is derived from her theory of FHA liability, which she could have, but did not, raise in the state court proceedings.  Notwithstanding this difference, her request for injunctive relief is essentially identical.

11

> facts alleged. A lack of identity of these facets would,
> of course, support the conclusion that there is no
> identity of cause of action.

Id. (citations omitted).

In this case, the underlying events giving rise to the various legal claims are identical because in both actions Turner alleges the same wrongful refusal of her section 8 vouchers, failure to refer her to social services agencies, and failure to evaluate her request for accommodation. As a result, the actions share the same acts complained of, identity of witnesses, documents and facts alleged. In short, as the above quoted language from McArdle suggests, by interposing a theory of liability under the FHA in the district court that she had withheld in the common pleas court, Turner did not create a separate cause of action and thereby insulate her claim in the district court from the application of the doctrine of res judicata. Rather, what she did do was ensure that neither court would consider her FHA claims on the merits. Even though this result may seem to be unfortunate, it is a product of her own litigation strategy, and she is obliged to accept it.

The Pennsylvania Supreme Court's decision in Balent is instructive. See 669 A.2d 309. The plaintiffs in Balent first filed an inverse eminent domain action in which they sought compensation on the grounds that the city's demolition of their building was a de facto taking. Following the dismissal of their action, the plaintiffs filed a second action in which they alleged various Fifth and Fourteenth Amendment violations. The court found that the doctrine of res judicata barred the plaintiffs' second action because "both claims derived from the same cause of action– compensation for the destruction of [plaintiffs'] building," which "would require that the parties rehash the facts and legal arguments presented" in the prior action. Id. at 315. Likewise, Turner's present action and the prior state-court litigation originated from the same cause of action, inasmuch as they are based on the same allegedly wrongful acts. As in Balent, adjudicating Turner's new theory of recovery would require the parties to "rehash" the facts and legal arguments raised before the court of common pleas. In sum, because Turner could have raised her FHA claims in her prior state-court action based on the same cause of

12

action, application of the doctrine of res judicata bars the claims.[13]

By applying res judicata in this action we are acting consistently with the approach of the Pennsylvania courts in adhering to the Restatement (Second) of Judgments in analyzing res judicata issues. See, e.g., McArdle, 627 A.2d at 1223 (noting that conclusion is consistent with Restatement (Second) of Judgments § 25, cmt. e (1982)). The Restatement provides in part:

> A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground.

Restatement (Second) of Judgments § 25 cmt. e (1982). Accordingly, because Turner correctly concedes that there was no jurisdictional obstacle to the FHA claims being litigated in state court, see reply br. at 13 ("Ms. Turner is well aware that the state court has concurrent jurisdiction over her [FHA] claims and that she is not required to exhaust her administrative remedy before proceeding in state (or federal) court."), this action is barred by the application of the principle of res judicata.[14]

Finally, our decision is consistent with the purposes

---

[13]Turner argues, however, citing Pennsylvania Rule of Civil Procedure 1020, that res judicata does not bar this action because Pennsylvania has a permissive joinder rule that did not require her to join her FHA claims in the state court litigation. This argument confuses the separate concepts of waiver and res judicata. Even assuming that Turner was not required to raise her FHA claim under the procedural rules, she nonetheless could have done so. Pennsylvania courts, without citing or discussing compulsory joinder rules, consistently have held that the common law doctrine of res judicata bars "claims that were or could have been raised in the prior action." See, e.g., Balent, 669 A.2d at 315 (emphasis added).

[14]42 U.S.C. § 3613(a) provides that state courts have concurrent jurisdiction over FHA actions.

underlying the doctrine of res judicata. As the Supreme Court of Pennsylvania explained in <u>Balent</u>, "the purpose of [the res judicata] doctrine is to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudications." 669 A.2d at 315. Application of res judicata in this action best serves these purposes, as does the Pennsylvania courts' long-standing disapproval of claim splitting. <u>See, e.g.</u>, <u>Spinelli v. Maxwell</u>, 243 A.2d 425, 428 (Pa. 1968) (explaining "sound policy" to avoid splitting up claims arising from the same wrongful act).[15]

## V. CONCLUSION

For the foregoing reasons, we will affirm the summary judgment order entered on March 22, 2005.

---

[15]We note that collateral estoppel, known as issue preclusion, also likely bars Turner's action. Notably, the court of common pleas determined that Crawford Square "did properly refer Ms. Turner to a social service agency . . ., and that its alleged failure to refer her to other agencies with which she was in fact in contact was immaterial." App. at 21-22. This finding likely precludes her claims insofar as they are based on an alleged failure to refer her to social services agencies. In addition, the court of common pleas determined that Crawford Square's decision to evict Turner was "motivated <u>solely by her failure to pay rent in a timely fashion</u>," <u>id</u>. (emphasis added), which could preclude her disability claim inasmuch as the court found a legitimate non-discriminatory reason for her eviction.

14