**Joi CAPLEN, Appellant**

v.

**SN SERVICING CORPORATION; SN Insurance Company, Inc.; Security National Master Holding Company, LLC; Security National Master Manager, LLC; Robin P. Arkley, II; Alaska Seaboard Partners, LP; Alaska Seaboard Investments, Inc.**

No. 07–4050.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) May 28, 2009.

Filed: Aug. 31, 2009.

Neil E. Jokelson, Esq., Neil E. Jokelson & Associates, Philadelphia, PA, for Appellant.

Robert J. Murtaugh, Esq., The Chartwell Law Offices, Norristown, PA, David P. Curtis, Esq., Michael H. Pinkerton,

Esq., Leslie W. Ehret, Esq., Frilot, New Orleans, LA, for Appellee.

Before: FISHER, CHAGARES and COWEN, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Joi Caplen appeals from the District Court's orders entering summary judgment against her. We will affirm.

### I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In March 1993, Caplen and her husband, Larry, executed a promissory note in favor of Mellon Bank, secured by a mortgage on their home in Blue Bell, Pennsylvania. Under the terms of the note and mortgage, the Caplens agreed to carry hazard insurance on the property and to provide evidence of insurance to the bank; if they failed to do so, the bank was authorized to "force place" insurance on the property—that is, to independently obtain insurance and add the cost of the premiums to the principal due under the note—in order to protect its security interest in the property.[1]

The Caplens eventually defaulted on the note. On June 5, 2000, Mellon Bank initiated foreclosure proceedings in the Court of Common Pleas of Montgomery County. While that action was pending, Mellon Bank sold the note and mortgage to Alaska Seaboard Partners, LP (ASP). ASP's servicing affiliate, Security National Servicing Corporation (SNSC), then sent a series of letters to the Caplens, informing them that ASP had acquired their loan and asking them to provide proof of insurance. The Caplens did not respond to these letters.

On March 14, 2002, the Court of Common Pleas entered judgment against the Caplens in the amount of $116,662.38, plus post-judgment interest. Soon afterwards,

---

1. In relevant part, the promissory note provided:

   If you require me to, I will insure the Collateral against loss.... Any insurance policy will provide for payment of the insurance proceeds to you to the extent necessary to pay the amounts which I owe under this note. I will give you any insurance policy or a certificate to show that I have it. If I do not buy and maintain the required insurance, or if I do not pay the premiums, you may, if you choose, do these things for me for me [sic]. If you do this and I do not reimburse you for the premiums within a specified time, you may add the unpaid balance of the premiums to the unpaid balance of the Principal Amount of this note. In this case, interest will be charged on the unpaid balance of these premiums at the rate shown on page 1 of this note, beginning on the date you paid the premiums.
   I direct all insurance companies providing ... insurance on real ... property ... in connection with this loan to pay you any money owed to me.... You may use any such money to pay amount [sic] which I owe under this note.

   App. 74. Likewise, the mortgage provided:
   Mortgagor shall keep the Mortgaged Property insured against loss by fire ... in such amounts as Mortgagee shall require.... Mortgagor shall deliver written evidence of all such insurance to Mortgagee.
   If Mortgagor fails to obtain and keep in force any required insurance or fails to pay the premiums on such insurance, Mortgagee at its sole option may elect to do so. In the event of loss, Mortgagor shall give prompt notice to the Insurer and Mortgagee. Mortgagee at its option may elect to make proof of loss if Mortgagor does not do so promptly....
   [I]nsurance proceeds shall be applied to restoration or repair of the Mortgaged Property or to reduction of the Obligation, as Mortgagee may determine in its sole discretion.

   App. 67.

the Caplens and ASP entered into a forbearance agreement, under which the Caplens again agreed, among other things, to provide proof of insurance on their property. When the Caplens still did not supply proof of insurance, SNSC obtained a force-placed insurance policy underwritten at Lloyd's.

In December 2003, SNSC cancelled its Lloyd's policy and replaced it with a policy issued by Security National Insurance Company (SNI), a captive insurance company that provides force-placed insurance to Security National Master Holding Company, LLC (SNMHC) and its affiliated companies, including ASP and SNSC. The SNI force-placed policy contained an "other insurance" clause, which provided:

"If there is available to the Assured any other insurance at the time of loss … covering the same property against the same perils insured against under this Policy … this insurance shall not be called upon in contribution until the amount due from all such [other] insurance shall have been exhausted; it being the intent of this insurance to indemnify the Assured for only the difference between the amount due from such other insurance and the amount of actual loss sustained by the Assured not exceeding, however, the applicable limit specified in this Policy."

App. 559 ¶ 14. The SNI policy listed "Security National Holding Company, LLC" as the "Assured." App. 553.

On November 10, 2004, a fire destroyed the Caplens' home. Soon afterwards, the Caplens sent a letter to SNSC to inform it of the fire but, as they admit, used an incorrect zip code; SNSC never received the incorrectly addressed letter. The Caplens then defaulted on the note for a second time, prompting ASP to file a motion to reassess damages in the foreclosure action. In connection with that motion, SNSC sent an inspector to the Caplens'

property on April 20, 2005; when the inspector saw the damage caused by the fire, he quickly informed SNSC.

A few weeks later, SNSC was contacted by an attorney representing the Blue Bell Woods Community Association—the homeowners' association for the development in which the Caplens' home was located—who informed SNSC that the Caplens' property was covered by an insurance policy issued to the association by the Greater New York Mutual Insurance Company and that the proceeds of that policy would be used to repair the property. Among the many provisions of the Greater New York policy was a clause titled "Unit–Owner's Insurance," which specified: "A unit-owner may have other insurance covering the same property as this insurance. This insurance is intended to be primary, and not to contribute with such other insurance." App. 116 ¶ 6.

On June 24, 2005, the Court of Common Pleas granted ASP's motion to reassess damages and entered an amended judgment against the Caplens in the amount of $129,127.44—including $1,607.13 for premiums on the SNI force-placed insurance policy from March 2001 through February 2005—plus post-judgment interest. A little over a year later, the Caplens sold their property for a net profit. They ultimately paid $2,407.21 to ASP for premiums on the SNI policy through June 2006.

On November 15, 2005, Joi Caplen filed this suit in the United States District Court for the Eastern District of Pennsylvania against SNMHC, ASP, SNSC, and SNI, as well as Alaska Seaboard Investments, Inc. (ASI), Security National Master Manager, LLC, and Robin P. Arkley II. She asserted claims predicated on breach of fiduciary duty, breach of contract, fraud, abuse of process, and bad faith under Pa. Cons.Stat. Ann. § 8371, among other claims. Following discovery,

the defendants moved for summary judgment, which the District Court granted as to all counts. This timely appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's decision to grant summary judgment, applying the same standard the district court should apply. *Union Pac. R.R. Co. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 125 (3d Cir.2002). Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts must be viewed in the light most favorable to the nonmoving party and all reasonable inferences from the evidence must be drawn in that party's favor. *Conopco, Inc. v. United States*, 572 F.3d 162, 165 (3d Cir.2009). "We may affirm the District Court's order granting summary judgment on different grounds, so long as the record supports the judgment." *Id.* (citing *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir.2006) and *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1145 n. 1 (3d Cir.1983)).

## III.

On appeal, Caplen argues that the District Court erred in determining that SNI did not owe her any duty under its force-placed policy because, she insists, she and her husband "were insureds under the policy." This argument is without merit.

Under Pennsylvania law, a court interpreting an insurance policy "must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract." [2] *Riccio v. Am. Republic Ins. Co.*, 550 Pa. 254, 705 A.2d 422, 426 (1997). "[A]n insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument." *Id.*; *accord Nationwide Ins. Co. v. Schneider*, 906 A.2d 586, 591 (Pa.Super.Ct.2006).

Caplen acknowledges that she is not a named insured under the SNI policy, but supports her argument by pointing to language in the SNI policy indicating that it insures "the financial interest of a Borrower in Covered Property in the event that such Covered Property suffers Direct Physical Loss or Damage." App. 556 ¶ 1. But the SNI policy also unambiguously provides that it may be "called upon in contribution" only after all other available insurance on the property has been "exhausted." App. 559 ¶ 14. In brief, the SNI policy is plainly an "excess" policy— Caplen's argument to the contrary notwithstanding—and the undisputed evidence in the record demonstrates that the Greater New York insurance policy completely covered the cost of restoring the Caplens' home, leaving no excess amount for the SNI policy to contribute. Thus, after considering the SNI policy in its entirety, we agree with the District Court that SNI did not owe Caplen any duty under its policy. Moreover, to the extent Caplen intends to argue that the District Court erred in concluding that SNI owed her no fiduciary duty, she points to no

---

**2.** The District Court determined, and the parties do not dispute, that the substantive law of Pennsylvania governs here. *See, e.g., Berrier*

*v. Simplicity Mfg., Inc.*, 563 F.3d 38, 46 n. 11 (3d Cir.2009).

evidence in the record or case law that would lead us to disturb that determination. Accordingly, Caplen's claims against SNI fail as a matter of law.

 We also reject Caplen's contention that the District Court should not have granted summary judgment in favor of the other defendants on her abuse of process claim. "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it." *McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020, 1023 (1987) (internal citation omitted). To establish a claim for abuse of process, a plaintiff must show that the defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed[,] and (3) harm has been caused to the plaintiff." *Cruz v. Princeton Ins. Co.,* 972 A.2d 14, 15 n. 1 (2009) (internal quotation marks omitted); *accord Rosen v. Am. Bank of Rolla,* 426 Pa.Super. 376, 627 A.2d 190, 192 (1993).

Caplen argues that ASP (and, by extension, the other non-SNI defendants) only sought reimbursement for premiums on the SNI force-placed policy in the foreclosure action, and refused to release the lien on the Caplens' property, in order "to extort greater payment than what is owed by the already strapped sub-prime borrower." But ASP was authorized, under the clear terms of the mortgage and promissory note, to force place insurance on the Caplens' property in the absence of proof of insurance, and Caplen has introduced no evidence that she ever provided such proof. Nor has she introduced any evidence that ASP pursued any aspect of the foreclosure process for illegitimate reasons. The District Court correctly granted summary judgment on this claim.[3]

---

3. We have considered the sundry other assertions in Caplen's appellate briefs and, to the extent we can decipher them, we reject them as unsupported by the record.

## IV.

For the foregoing reasons, we will affirm the District Court's orders granting summary judgment in favor of the defendants.