CLD-270                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4346
_____

WAYNE PRATER,
                              Appellant

v.

CITY OF PHILADELPHIA FAMILY COURT; ANGELES ROCA, JUDGE;
ELIZABETH JACKSON, JUDGE; JAMES M. WELKIE, CUSTODY MASTER;
FERN B. CAPLAN, CUSTODY MASTER; ELSIE ECHEVARRIA, SECRETARY;
EDNA MONEY, SECRETARY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:12-cv-03423)
District Judge:  Honorable C. Darnell Jones, II
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 5, 2014

Before:  FUENTES, JORDAN and SHWARTZ, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 16, 2014)
_____

OPINION
_____

PER CURIAM

In June 2012, Wayne Prater filed suit, pro se and in forma pauperis, against the

Philadelphia Family Court, two of its judges and their secretaries, and two custody

masters. He alleged that the Family Court refused to give him access to his children and

violated his parental rights and his rights under the Sixth and Fourteenth Amendments.

Prater asserted that he sought custody of his children beginning in April 2011, but the

date for a custody hearing had been delayed repeatedly because he had conflicts,[1] a

custody master did not call his prison to set up a videoconference, and the Family Court

set new hearing dates months in advance. Also, he claimed that the judges' secretaries

never forwarded to the judges his letters requesting a sooner hearing date. Prater

additionally alleged that, during the time period when he was seeking custody, his child

was given a medication without his consent.

Prater sought an injunction "to get in Family Court for [his] custody rights and

stop the continuous violation of [his] constitutional and parental rights by the

Philadelphia Family Court." He explained that he needed a hearing date in Family Court

before his scheduled date of November 19, 2012. He further requested that if an

injunction could not be issued, he would like an unspecified damages award.

The District Court immediately dismissed part of Prater's complaint under 28

U.S.C. § 1915(e)(2)(iii). Specifically, the District Court ruled that the Philadelphia

---

[1] A criminal prosecution against him was proceeding at the same time.

Family Court was entitled to sovereign immunity, and that the Family Court judges were entitled to absolute immunity. After the complaint was served, the remaining four defendants filed a motion to dismiss, asserting that Prater had described no claim that sounded in the Sixth Amendment and had not alleged their personal involvement in any actions that had allegedly wronged him. The defendants additionally argued that even if he succeeded in alleging they were involved, they were entitled to qualified immunity because they could have reasonably believed their actions were lawful. Prater opposed the motion and sought the appointment of counsel. Six months later, in August 2013, he also requested leave to amend his complaint, seeking to add the custody master who had terminated his parental rights after the filing of his complaint. He stated that the decision was not based on evidence and that the custody master showed "bias, ill will, and prejudice, in violation of constitutional and state laws" and caused irreparable harm to his son's health in terminating his parental rights without evidence to warrant termination.

The District Court granted the defendants' motion and denied Prater's. The District Court explained that the Rooker-Feldman doctrine[1] prohibited suits to challenge the judgments of state family courts. Putting aside the Family Court judgment, the District Court ruled that the custody masters and judicial secretaries were also immune

---

[1]The doctrine derived from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

3

from suit. The District Court further held that Prater's request for relief in securing a hearing date to stop the violation of his rights was moot. Lastly, the District Court concluded that amendment was futile. Prater appeals.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we may affirm on any basis supported by the record, see Erie Telecomms., Inc. v. City of Erie, 853 F.2d 1084, 1089 n.10 (3d Cir. 1988). We exercise plenary review over the orders dismissing Prater's complaint. See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000); McGovern v. City of Phila., 554 F.3d 114, 115 (3d Cir. 2009); Turner v. Crawford Square Apts. III, L.P., 449 F.3d 542, 547 (3d Cir. 2006) ("Our review of the district court's application of the Rooker-Feldman doctrine is plenary."). We review the denial of leave to amend and the denial of appointment of counsel for abuse of discretion. See Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004); Tabron v. Grace, 6 F.3d 147, 157-58 (3d Cir. 1993). Upon review, because no substantial issue is presented on appeal, we will summarily affirm the District Court's judgment. See 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.

To the extent that Prater sought injunctive relief, essentially, an order for a hearing date in Family Court before the scheduled date in November 2012, his complaint was mooted by the passage of time. A federal court does not have the power to decide moot questions. See North Carolina v. Rice, 404 U.S. 244, 246 (1971). Article III requires a live case or controversy throughout the entire litigation; if no live controversy exists, the court must dismiss the case for lack of jurisdiction. See Lusardi v. Xerox

4

Corp., 975 F.2d 964, 974 (3d Cir. 1992). Accordingly, the District Court appropriately

dismissed Prater's complaint as moot to the extent it sought injunctive relief.

Furthermore, the Family Court was entitled to sovereign immunity from suit, as

the District Court concluded. See Benn v. First Judicial Dist. of Pa. , 426 F.3d 233, 235

n.1 & 241 (3d Cir. 2005). The two judges named as defendants were immune to suit for

damages for the alleged actions in their judicial capacity, even if any action taken "was in

error, was done maliciously, or was in excess of [] authority." Stump v. Sparkman, 435

U.S. 349, 356 (1978). Likewise, the custody masters, acting on a judicial matter in a

capacity functionally equivalent to judges, were immune from suit. [2] See Forrester v.

White  484 U.S. 219, 225-26 (1988) (describing the extension of judicial immunity to

others who perform judicial, quasi-judicial, and prosecutorial functions); Gallas v.

Supreme Ct., 211 F.3d 760, 772-73 (3d Cir. 2000) (explaining that judicial employees

acting as intermediaries for judges or "functioning as an arm of the court" are protected

by judicial immunity). To the extent the judicial secretaries were acting on their judges'

instructions, they were entitled to immunity as well. See Gallas, 211 F.3d at 772-73. To

the extent that Prater included allegations of secretarial actions beyond that role, we

conclude that he failed to state a Sixth or Fourteenth Amendment claim upon which relief

---

[2] Although the claims for injunctive relief are moot, we further note that the Federal Courts Improvement Act of 1996 amended 42 U.S.C. § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; see also Azubuko v. Royal, 443 F.3d 302, 303-04 (3d Cir. 2006).

5

can be granted.

Also, it cannot be said that the District Court abused its discretion in denying Prater leave to amend his complaint. Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend should "be freely given when justice so requires." However, a district court may exercise its discretion and deny leave to amend on the basis of undue delay, bad faith, dilatory motive, prejudice, or futility. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted).

Prater's proposed amendment did not include actionable claims. To the extent that Prater sought to challenge the ultimate judgment in the custody matter, the Rooker-Feldman doctrine barred his claim, as the District Court stated. See Turner, 449 F.3d at 547 (discussing the contours of the Rooker-Feldman doctrine). To the extent that Prater sought to sue an additional custody master for acts taken in a judicial or quasi-judicial capacity, the custody master is as immune from suit as the other custody masters. Although Prater generally complained of the custody master's "bias, ill will, and prejudice," he did not allege that the custody master acted outside of his judicial capacity or in the absence of jurisdiction. See Stump, 435 U.S. at 356-57; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (holding that a complaint must include "enough facts to state a claim to relief that is plausible on its face"); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

6

Lastly, the District Court did not abuse its discretion in denying Prater's motion for appointment of counsel. See Tabron, 6 F.3d at 155 (stating that a court must first conclude that a litigant's claims have some merit in fact and law before appointing counsel).

For these reasons, we will affirm the District Court's judgment.