NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1657

_____

In re: GABRIEL BRAVO,
                                      Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2:22-cv-04820
District Judge:  The Honorable Kelley B. Hodge

_____

Submitted under Third Circuit L.A.R. 34.1(a)
April 11, 2025

Before: HARDIMAN, PORTER, and SMITH, *Circuit Judges*

(Filed: April 17, 2025)

_____

OPINION[*]

_____

SMITH, *Circuit Judge*.

I.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Gabriel Bravo appeals the District Court's order affirming the Bankruptcy Court's overruling of his claim objection and denial of his subsequent motion for reconsideration. For the following reasons, we will affirm the District Court's order.

II.

In January 2006, Gabriel Bravo and his wife obtained a $71,250 loan from Interbay Funding, LLC, secured by property the Bravos owned in Philadelphia, Pennsylvania. Interbay assigned the loan to Bayview Loan Servicing, LLC. Bayview filed a Civil Action in Mortgage Foreclosure in the Court of Common Pleas of Philadelphia County in June 2015. The Court of Common Pleas issued a consent order granting Bayview a $105,613.62 *in rem* judgment with interest accruing until the date of a sheriff's sale. Before a sheriff's sale was scheduled, Bayview assigned the mortgage foreclosure to E-Z Cashing, LLC.

The property initially sold at a July 2017 sheriff's sale, but the Court of Common Pleas later vacated that sale. In October 2017, before a subsequent sale could occur, Bravo filed his first Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania. So the Court of Common Pleas postponed the sheriff's sale. After the Bankruptcy Court dismissed Bravo's petition, he filed another the next day, prompting the Court of Common Pleas to again stay the sheriff's sale. The Bankruptcy Court dismissed Bravo's second petition in November 2020.

Three months later, E-Z Cashing filed a Motion to Reassess Damages in the Court of Common Pleas. The motion alleged that in the four years since the Court issued its $105,613.62 consent judgment: (a) Bravo incurred $31,252.08 in interest on that amount; (b) E-Z Cashing itself incurred an additional $19,049.55 in post-judgment costs; and (c)

2

Bravo paid E-Z Cashing $2,880. E-Z Cashing asked the Court of Common Pleas to amend the judgment to $153,035.25, which represented the amount of the consent judgment, plus post-judgment interest and costs, less Bravo's payments.

Bravo responded to E-Z Cashing's motion by filing an Answer with New Matter.[1] Bravo argued that E-Z Cashing was not entitled to the post-judgment costs it sought. He also claimed that he had actually paid E-Z Cashing $31,184 since the consent judgment was entered, significantly more than the $2,880 conceded in E-Z Cashing's motion. Bravo requested that the Court of Common Pleas reject E-Z Cashing's claim for post-judgment costs, credit his over-$30,000 in payments, and amend the judgment to $105,681.70.

Accepting neither party's proposed dollar figure, the Court of Common Pleas issued an order in June 2021 granting E-Z Cashing's motion and reassessing damages to $136,865.70. The Court of Common Pleas did not issue an opinion explaining its own calculation, but the Court did state in its order that it had reached its conclusion "upon consideration of" E-Z Cashing's motion and Bravo's response. DCD 2-1 at 71. The amount of the reassessed judgment equaled the initial $105,613.62 consent judgment, plus the $31,252.08 E-Z Cashing asked for as post-judgment interest. The order did not account for any post-judgment payments made by Bravo to E-Z Cashing—even the $2,880 E-Z Cashing admitted Bravo paid. Bravo did not move for reconsideration or appeal.

---

[1] Pursuant to Pennsylvania Rule of Civil Procedure 1030, "[a] party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading." Pa. R.C.P. 1030(a). A party may raise "affirmative defenses including . . . payment" in a new matter. *Id.*

3

Four months later, in October 2021, Bravo filed his third Chapter 13 Bankruptcy Petition. E-Z Cashing filed a Proof of Claim seeking the amount stated in the Court of Common Pleas' June 2021 order reassessing damages (hereinafter the "reassessment order"), plus interest. Bravo objected. He argued that the reassessment order did not account for the $31,284[2] he had allegedly paid E-Z Cashing following issuance of the consent judgment. E-Z Cashing countered that the Court of Common Pleas' reassessment order controlled and that the doctrine of *res judicata* prevented Bravo from relitigating the issue of post-judgment payments before the Bankruptcy Court.

After an evidentiary hearing and supplemental briefing, the Bankruptcy Court overruled Bravo's objection to E-Z Cashing's Proof of Claim on *res judicata* grounds. It reasoned that E-Z Cashing's claim was based on the Court of Common Pleas' reassessment order and that Bravo raised the issue of crediting post-judgment payments in that proceeding. The Court explained: "Whether the [Court of Common Pleas] considered and rejected [Bravo's] Post-Judgment Payments, or alternatively did not consider them at all because [Bravo] failed to properly follow Pennsylvania procedure in asserting them, does not change the fact that they arose from the same claim and cause of action . . . and could have been litigated in connection therewith." DCD 2-1 at 364. The Bankruptcy Court thus held that *res judicata* barred Bravo from objecting to E-Z Cashing's claim.

---

[2] Before the Court of Common Pleas, Bravo alleged that he had paid E-Z Cashing a total of $31,184. We agree with the District Court that this "discrepancy of $100.00 is de minimis and is likely the result of scrivener's error." App. 10 n.7.

Bravo moved for reconsideration. He argued that the Bankruptcy Court erred by failing to credit a separate $500 payment he had made to E-Z Cashing after filing his third bankruptcy petition. Bravo also claimed that *res judicata* could not apply because EZ-Cashing engaged in fraud by failing to credit Bravo for various payments. The Bankruptcy Court granted Bravo's motion as to the $500 payment but denied it in all other respects.

Bravo appealed to the United States District Court for the Eastern District of Pennsylvania. That Court affirmed, and Bravo timely appealed to this Court.

III.[3]

"On an appeal from a bankruptcy case, our review duplicates that of the district court and view[s] the bankruptcy court decision unfettered by the district court's determination[.]" *In re Orton*, 687 F.3d 612, 614–15 (3d Cir. 2012) (internal quotation marks and citation omitted). In turn, we review the Bankruptcy Court's findings of fact for clear error and its legal conclusions de novo. *Id.* at 615.

Bravo contends that the Bankruptcy Court erred in concluding that *res judicata* barred his objection to E-Z Cashing's Proof of Claim. We disagree.

In determining the preclusive effect of a Pennsylvania judgment, we look to Pennsylvania law. *Turner v. Crawford Square Apts. III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006). Under the doctrine of *res judicata*, "[a]ny final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995)

---

[3] The District Court had jurisdiction under 28 U.S.C. § 158(a)(1); we have jurisdiction pursuant to 28 U.S.C. §§ 158(d)(1) and 1291.

(citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The doctrine applies not only to claims actually litigated in the first proceeding, but also to claims that could have been litigated "if they were part of the same cause of action." *R/S Fin. Corp. v. Kovalchick*, 716 A.2d 1228, 1230 (Pa. 1998).

For *res judicata* to apply, "Pennsylvania courts require that the two actions share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." *Turner*, 449 F.3d at 548 (citing *Bearoff v. Bearoff Bros., Inc.*, 327 A.2d 72, 74 (Pa. 1974)). Here, Bravo contests only the Bankruptcy Court's determination that the two actions shared conditions one and two. We see no error in the Bankruptcy Court's analysis.

The "thing" sued upon in the Court of Common Pleas and the Bankruptcy Court was the same. Both actions were disputes with respect to the amount Bravo owed E-Z Cashing on the consent judgment stemming from the underlying foreclosure action. *See, e.g.*, *Romah v. Romah*, 600 A.2d 978, 981 (Pa. Super. Ct. 1991). The causes of action were likewise identical. Before both Courts, Bravo complained of E-Z Cashing's failure to credit the *same* alleged post-judgment payments. *See Turner*, 449 F.3d at 550 ("[The] present action and the prior state-court litigation originated from the same cause of action, inasmuch as they are based on the same allegedly wrongful acts."). And in both proceedings, Bravo sought credit for post-judgment payments in an effort to reduce his obligation to E-Z Cashing. *See Kelly v. Kelly*, 887 A.2d 788, 792 (Pa. Super. Ct. 2005) (concluding two causes of action were identical where the appellant "ma[de] the same demand for recovery" and sought "compensation for the same damages"). Because

6

adjudicating Bravo's claim objection "would require the parties to 'rehash' the facts and legal arguments raised before the [C]ourt of [C]ommon [P]leas[,]" the Bankruptcy Court properly concluded that the things sued upon and the causes of action in both matters were identical for *res judicata* purposes. *Turner*, 449 F.3d at 550.

Still, Bravo argues that *res judicata* cannot preclude his claim objection because the issue of crediting his post-judgment payments was not "actually litigated" in the Court of Common Pleas. Opening Br. at 19. In his view, because the Court of Common Pleas neglected to credit even the $2,880 in post-judgment payments E-Z Cashing had conceded, "it is quite likely" that the Court "believed that its only duty was to determine the gross amount" of damages, without crediting any payments. Opening Br. at 18.

"An issue is 'actually litigated' when it 'is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" *O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1066 (3d Cir. 1991) (quoting Restatement (Second) of Judgments § 27 comment d, at 255 (1982)). There can be no question that Bravo raised the issue of receiving credit for post-judgment payments in his Answer and New Matter before the Court of Common Pleas. And Bravo points to no Pennsylvania Rule[4] or precedent that prevents a court from crediting post-judgment payments when reassessing damages

---

[4] Bravo points to Pennsylvania Rule of Civil Procedure 1037 and Philadelphia County Local Rule 1037.2, arguing that because neither Rule contemplates crediting post-judgment payments, the Court of Common Pleas believed it lacked the authority to do so. But those Rules govern the assessment of damages in the first instance before default judgment is entered. They do not apply when a party moves to reassess the amount of previously awarded damages. *See EMC Mortg., LLC v. Biddle*, 114 A.3d 1057, 1072 n.12 (Pa. Super. Ct. 2015).

pursuant to its inherent "equitable power to enforce the underlying judgment and to grant relief until the judgment is discharged or satisfied." *PNC Bank, N.A. v. Unknown Heirs*, 929 A.2d 219, 227 n.3 (Pa. Super. Ct. 2007). Although the brevity of the reassessment order precludes a full understanding of the Court of Common Pleas' analysis, we are not persuaded that the Court lacked the authority to determine the issue of crediting post-judgment payments and therefore did not actually litigate the issue.[5]

Moreover, to the extent Bravo believed that the Court of Common Pleas failed to adequately address the issue of post-judgment payments, he could have litigated that assertion by seeking reconsideration or appealing the Court's reassessment order. *Biddle*, 114 A.3d at 1061. He elected not to. "[I]n the absence of an appeal," even an "erroneous adjudication is res judicata[.]" *Tulewicz*, 606 A.2d at 433 (Larsen, J., dissenting). Because Bravo did not seek further relief, *res judicata* precludes him from re-litigating in the Bankruptcy Court the issue of his entitlement to credit for post-judgment payments. *See Burke v. Pittsburgh Limestone Corp.*, 100 A.2d 595, 599 (Pa. 1953) ("[A]ny mistakes in the original judgment are wrapped up in that judgment and cannot be inquired into thereafter.").

---

[5] We have not overlooked the Bankruptcy Court's observation that "there was compelling evidence" that E-Z Cashing "failed to credit a significant amount of Post-Judgment Payments" Bravo "made when seeking the Damages Reassessment Order." DCD No. 2-1 at 364 n.7. Nevertheless, that Court determined that "*res judicata* preclude[d] it" from making a contrary finding. *Id.* Even assuming the Court of Common Pleas erred by not crediting these payments, "that error, although regrettable, is [nonetheless] res judicata[.]" *Tulewicz v. S.E. Pa. Transp. Auth.*, 606 A.2d 427, 433 (Pa. 1992) (Larsen, J., dissenting).

Finally, we turn to Bravo's contention that the Bankruptcy Court erroneously rejected his argument that *res judicata* cannot apply because E-Z Cashing engaged in fraud. Under Pennsylvania law, preclusive effect will not be given to a judgment that "has been procured by fraud or collusion[.]" *Wilkes v. Phoenix Home Life Mut. Ins. Co.*, 902 A.2d 366, 387 (Pa. 2006) (citing *Morris v. Jones*, 329 U.S. 545, 550–51 (1947)). To circumvent *res judicata*'s application, the prior judgment must have been procured by extrinsic fraud, *i.e.*, fraud "collateral to the matter tried by the first court[.]" *McEvoy v. Quaker City Cab Co.*, 110 A. 366, 368 (Pa. 1920). Bravo, however, never argued that E-Z Cashing engaged in extrinsic fraud. He claimed only that E-Z Cashing lied about receiving and/or crediting his post-judgment payments during court proceedings. Such intrinsic fraud is insufficient to defeat the application of *res judicata*.[6] *See id.* (explaining that "a fraud in the matter on which the decree was rendered" cannot overcome *res judicata*'s application).

For the foregoing reasons, we will affirm the District Court's order.

---

[6] For this reason, and as the Bankruptcy Court concluded, Bravo's reliance on *Long v. Shorebank Dev. Corp.*, 182 F.3d 548 (7th Cir. 1999), is misplaced.