PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1813
_____

TIMOTHY E. VUYANICH; CAROL L. VUYANICH,
Appellants

v.

SMITHTON BOROUGH; CHIEF MICHAEL R. NATALE,
in his individual capacity; PATROLMAN RALPH R.
MARSICO, JR., in his individual capacity; DALE H.
COOPER; MARSH AUTO SAVAGE INC.; HARRY F.
THOMPSONS GARAGE, INC.; JARVIS AUTO & TRUCK
SALVAGE; R&R AUTO RECYCLING; SOUTH
HUNTINGDON TOWNSHIP; SUPERVISOR EDDIE
TROUPE, in his individual capacity; SUPERVISOR
MATTHEW JENNEWINE, in his individual capacity;
SUPERVISOR RICHARD GATES, in his individual capacity
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-19-cv-01342)
District Judge: Honorable William S. Stickman, IV
_____

Argued on December 15, 2020

Before: AMBRO, BIBAS, and ROTH, <u>Circuit Judges</u>

(Opinion filed: July 27, 2021)

Alexander W. Brown **[Argued]**
Bernard P. Matthews, Jr.
Meyer Darragh Buckler Bebenek & Eck
40 North Pennsylvania Avenue, Suite 410
Greensburg, PA 15601
   *Counsel for Appellants*

Suzanne B. Merrick **[Argued]**
Thomas Thomas & Hafer
U.S. Steel Tower
600 Grant Street, Suite 2600
Pittsburgh, PA 15219
   *Counsel for Appellees Borough of Smithton,*
   *Chief Michael R. Natale, and Patrolman Ralph*
   *Marsico, Jr.*

Adam R. Gorzelsky
101 North Main Street, Suite 106
Greensburg, PA 15601
   *Counsel for Appellee Harry F. Thompson's*
   *Garage Inc.*

John P. Morgenstern
Penelope B. O'Connell
O'Hagan Meyer
1500 Market Street
East Tower, 12th Floor
Philadelphia, PA 19102

*Counsel for Appellee Jarvis Auto & Truck Salvage*

Dennis J. Mulvihill [**Argued**]
William C. Robinson, III
Amy V. Sims
Robb Leonard & Mulvihill
500 Grant Street
BNY Mellon Center, Suite 2300
Pittsburgh, PA 15219
        *Counsel for Appellees Township of South Huntingdon, Supervisor Eddie Troupe, Supervisor Matthew Jennewine, Supervisor Richard Gates*

————————————

OPINION OF THE COURT

————————————

AMBRO, <u>Circuit Judge</u>

Two homeowners allegedly treated their property as a junkyard. This resulted in misdemeanor criminal charges against one of the homeowners for creating a public nuisance. The surrounding borough sought to clean up the property while the charges were pending, and a Pennsylvania state court judge authorized the borough to do so after giving the homeowner a brief window to collect any belongings he wished to keep. The homeowners failed to retrieve their possessions during this window, and thereafter the borough and other affiliated entities hauled away the vehicles and other items that were strewn throughout the yard. In an effort to obtain damages

compensating them for their seized property, the homeowners filed suit in federal court, alleging violations of the United States Constitution and state law.

The District Court dismissed the complaint, holding it lacked jurisdiction under the *Rooker-Feldman* doctrine, which precludes federal district courts from exercising jurisdiction over appeals from unfavorable state court judgments—typically a task reserved for the United States Supreme Court. But that Court has repeatedly emphasized that the doctrine is a narrow one that defeats federal subject-matter jurisdiction only under limited circumstances. And we have a precise four-pronged inquiry for when *Rooker-Feldman* should be invoked. When even one of the four prongs is not satisfied, it is not proper to dismiss on *Rooker-Feldman* grounds. Because this case does not satisfy all four prongs, we reverse.

In so holding, we do not suggest that federal cases implicating matters previously litigated in state court should automatically survive a motion to dismiss. Far from it: there are many other principles, including claim and issue preclusion, that may doom such federal claims. But many of those principles are non-jurisdictional, and courts should be wary of finding a *Rooker-Feldman* jurisdictional issue where none exists.

## I. Facts and Procedural History

Timothy E. Vuyanich and his mother, Carol L. Vuyanich, reside at a property in Smithton, Pennsylvania they

4

own jointly.[1]   Their property straddles two municipal corporations in Westmoreland County, Pennsylvania: Smithton Borough (the "Borough") and South Huntingdon Township (the "Township").   The latter gave the former jurisdiction to enforce its ordinances on the Vuyanich property.

In July 2018, the Borough brought misdemeanor criminal charges against Timothy for abandoning inoperable vehicles, old appliances, and other trash on and around his property, in violation of local ordinances and state statutes. This was not Timothy's first run-in with local authorities; he had received multiple prior citations for keeping his motor vehicles in a nuisance condition but had allegedly refused to dispose of them.  Borough officials claim the property had been in an "offensive condition" since at least 2014, and that neighbors had complained the "junk" smelled bad, attracted snakes and rats, presented dangers to small children, and was an eyesore that might lower the value of their homes.  App. at 92.

Apparently impatient to have the property cleaned without waiting "months and months for the criminal charges to work their way through court," the Borough and the District Attorney's office agreed to seek the state criminal court's assistance in the meantime to get the job done.  App. at 99–100.  The Vuyaniches' complaint references minutes from a January 2019 meeting at which the Borough council apparently "talked about not telling Vuyanich what is happening beforehand, so that he doesn't remove items."  App. at 34, 84.

---

[1] Because Timothy and Carol share a last name, we use their first names when referring to them individually and refer to them collectively as "the Vuyaniches."

5

In June 2019, a state court judge held a status conference on Timothy's criminal case, at which Timothy, his public defender, an assistant district attorney, and Borough police chief Michael R. Natale appeared. The parties discussed the best means for cleaning up the property—a topic Timothy claims he was not adequately warned would be discussed. Natale represented that, "under the [B]orough ordinance that [Timothy] was originally cited for, the [B]orough has full authority to move in immediately and remediate the problem." App. at 121. The public defender told the judge Timothy needed more time to remove the items he wished to keep, in part because he was in poor health and his mobility was limited, and the judge agreed he would have 20 days to do so. But the judge also stated that, after the expiration of 20 days, "the [B]orough will be authorized to go in and start the clean up process." App. at 124.

After the hearing, the state court judge issued an order (the "June 18, 2019 order") continuing the criminal case for 60 days. It explained that this additional time was needed for a Borough "contractor to finish clean-up of [the] property [and] to determine [the] total cost" Timothy owed for the clean-up effort. App. at 127. It also provided that Timothy had "20 days to remove his personal items from [the] property." *Id.* It was silent, however, as to which items the Borough was authorized to seize and whether those items could be seized permanently or just temporarily.

On July 9, 2019, 21 days after the state court hearing, the Borough began cleaning the property without the Vuyaniches' permission or a warrant. The cleanup effort continued until early October 2019. Natale and Ralph Marsico, Jr. of the Borough Police Department, along with Township

Supervisors Eddie Troupe, Matthew Jennewine, and Richard Gates, allegedly participated in this effort, and contractors Dale Cooper, Harry F. Thompson's Garage, R&R Auto Recycling, Jarvis Auto & Truck Salvage, and Marsh Auto Salvage, Inc. were hired to haul away the debris strewn throughout the yard.[2]

The Vuyaniches take issue not only with this "intrusion[]," App. at 65, but also with the manner in which the cleanup was conducted. They claim some of the Defendants entered the "curtilage"[3] area of their yard, coming close to their dwelling, "physically contacting" their private shed, and ignoring the many "no trespassing" signs posted throughout the property. App. at 46. The Vuyaniches further allege Natale told some of the Defendants they could keep, sell, use, scrap, or destroy the items seized from the property without creating an inventory showing which items had resale value or had been destroyed. At least one of the Defendants was apparently able to obtain a small sum ($110) for scrap metal removed from the property.

Believing some of the removed items to be valuable, the Vuyaniches sent a cease-and-desist letter to a subset of the Defendants in July 2019, threatening to file a federal suit unless the Borough compensated them. An attorney for the Borough responded that they would not get even "one cent." App. at 152. In response, the Vuyaniches made good on their threat, filing a federal suit in October 2019 under 42 U.S.C. § 1983 alleging violations of the Fourth, Fifth, and Fourteenth

---

[2] We refer to this group collectively as "Defendants."

[3] The "curtilage" is "the area immediately surrounding and associated with the home." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (internal quotation marks and citation omitted).

Amendments alongside state law claims for conversion and trespass.

Defendants filed motions to dismiss the complaint, which the District Court granted in April 2020, holding that it lacked jurisdiction under the *Rooker-Feldman* doctrine. The Vuyaniches moved to alter the judgment under Federal Rule of Civil Procedure 59(e), which the District Court denied. The Vuyaniches then appealed to us. Shortly thereafter, in May 2020, Timothy was convicted of the public nuisance charge and ordered to pay $5,100 in restitution for the cost of cleaning up his property.

## II. Jurisdiction and Standard of Review

The District Court had federal question jurisdiction over the Vuyaniches' § 1983 claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367(a). We discuss the issue of our jurisdiction below, but to the extent we have subject-matter jurisdiction, we exercise it under 28 U.S.C. § 1291. *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 n.3 (3d Cir. 2010); *see also United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[A] federal court always has jurisdiction to determine its own jurisdiction."). We exercise fresh review over the District Court's dismissal of the suit under Federal Rule of Civil Procedure 12(b)(1). *Great W. Mining*, 615 F.3d at 163.[4]

---

[4] The Vuyaniches also appeal the District Court's denial of their motion to alter the judgment under Rule 59, which we review for abuse of discretion except for "matters of law, which are subject to plenary review." *Cureton v. Nat'l*

**III. Legal Background**

"In certain circumstances, where a federal suit follows a state suit, the *Rooker–Feldman* doctrine prohibits the district court from exercising jurisdiction." *Id.* at 163–64. The doctrine stems from 28 U.S.C. § 1257, which "vests authority to review a state court's judgment solely in th[e] [United States Supreme] Court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). The Supreme Court has relied on this doctrine to defeat federal subject-matter jurisdiction in only two cases, from which it derives its name: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Both cases were "essentially appeals from state-court judgments." *Great W. Mining*, 615 F.3d at 165.

In the years following *Rooker* and *Feldman*, federal courts sometimes blurred the lines between that doctrine and the principles of issue and claim preclusion. The latter two principles prevent a plaintiff from relitigating issues that were (and claims that were or could have been) litigated and resolved in a prior state court judgment. *See, e.g.*, *Marran v. Marran*, 376 F.3d 143, 152 (3d Cir. 2004) (holding that *Rooker-Feldman* prevents "relitigating in federal court the issues decided in a state court").

---

*Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001). However, because we reverse the District Court's dismissal of the case in the first instance, we need not address further the denial of the Rule 59 motion.

Troubled by these developments, in 2005 the Supreme Court observed that lower federal courts had "extend[ed]" the doctrine "beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law under 28 U.S.C. § 1738." *Exxon Mobil*, 544 U.S. at 283. It therefore unanimously reined in *Rooker-Feldman*, making clear it does not defeat jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court" or even presents a claim that "denies a legal conclusion" a state court has reached. *Id.* at 293 (citation omitted). Nor is *Rooker-Feldman* coterminous with "[c]omity or abstention doctrines." *Id.* at 292. Instead, the Court held, the doctrine "is confined to cases of the kind from which [it] acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. Those cases occupy a "narrow ground." *Id.*; *see also Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1289–90 (11th Cir. 2018) (Newsom, J., concurring) ("[T]he Supreme Court's *Exxon* decision is best understood as having narrowed what has been called the 'so-called *Rooker-Feldman* doctrine,' . . . to its barest essence.") (internal citation omitted).[5]

---

[5] After *Exxon-Mobil*, the late Justice Stevens suggested *Rooker-Feldman* was defunct altogether. *See Marshall v. Marshall*, 547 U.S. 293, 318 (2006) (Stevens, J., concurring) (arguing that an unrelated doctrine should be given "a decent burial in a grave adjacent to the resting place of the *Rooker-*

As the Supreme Court later explained, the distinction between *Rooker-Feldman* and preclusion is important because

> Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments. Incorporation of preclusion principles into *Rooker–Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act.

*Lance v. Dennis*, 546 U.S. 459, 466 (2006) (emphasis in original). And *Rooker-Feldman*, unlike claim and issue preclusion, implicates a federal court's subject-matter jurisdiction, meaning it cannot be forfeited or waived, *see United States v. Cotton*, 535 U.S. 625, 630 (2002), and courts must evaluate its applicability *sua sponte* if it is a concern, *see Bracken v. Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002).

We have translated the Supreme Court's approach to *Rooker-Feldman* into a four-pronged inquiry. To trigger the doctrine, the following requirements must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused by the state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining*, 615 F.3d at 166 (alterations omitted) (quoting *Exxon Mobil*, 544 U.S. at 284). We have described Prongs 2 and 4 as the "key requirements,"

---

*Feldman* doctrine"). However, the Supreme Court has not explicitly abolished it.

11

*id.* at 168, but only meeting all four requirements prevents a district court from exercising jurisdiction under *Rooker-Feldman*. We focus primarily on Prongs 2 and 4, neither of which was satisfied here. We also discuss Prong 1 as to Carol's claim.

## IV. Discussion

### A. Prong 2

To repeat, Prong 2 requires a plaintiff to "complain[] of injuries caused by the state-court judgments." *Great W. Mining*, 615 F.3d at 166. This requirement "may also be thought of as an inquiry into the source of the plaintiff's injury." *Id.* To deprive the court of jurisdiction, the plaintiff's injury must actually be "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at 167 (internal quotation marks and citation omitted).

Any injury Timothy and Carol suffered was not "caused by" a state court judgment.[6] As an initial matter, Natale, the Borough police chief, represented to the state court judge that the Borough had preexisting authority under a Borough

---

[6] The Vuyaniches argue the state court's June 18, 2019 order was not a "judgment" at all because it was an interlocutory order issued before Timothy's conviction and did not satisfy the "practical finality approach" we adopted in *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 460 (3d Cir. 2019). We need not address this issue because even assuming, without deciding, that the order was an effectively final judgment, it did not cause the Vuyaniches' injuries for the reasons that follow.

12

ordinance to seize at least some of the Vuyaniches' property. It is not clear this was true; Natale previously sent an internal email suggesting he believed the Borough could only clean up the property after obtaining permission from Timothy or a state court. However, Natale's position before the state court was at least defensible: a local ordinance facially permits the Borough, when confronted with vehicles on private property that have remained in nuisance condition despite notice of the problem to the owner, "to correct the conditions" by "enter[ing] upon the offending premises." App. at 182. Accordingly, if the Vuyaniches received the requisite notice, the Borough could arguably have removed at least the inoperative vehicles absent any action from the state court.

But even if the Borough lacked independent authority to seize the Vuyaniches' property, the state court is best viewed as having "acquiesced in" or "ratified" the Borough's seizure of the property rather than having "produced" it. *Great W. Mining*, 615 F.3d at 167. The court did not order the Borough to take the Vuyaniches' property or give any specific instructions on how the Defendants could go about the clean-up project. Indeed, to the extent the state court played any role in shaping the ultimate cleanup effort, it was to the Vuyaniches' benefit: Natale suggested the Borough would like to begin cleaning up the property immediately, but the court granted the request of Timothy's counsel for an additional 20 days to remove any valued items from the yard. App. at 118 (Public Defender: "I've been urging [Timothy] to cooperate, and he said that he will do that. We're just looking . . . for more time to see if we can solve this problem"); App at 122 (Judge: "So I'm telling [the Borough], you're not authorized to go in there until at least day 21."). And the actions with which the Vuyaniches principally take issue—springing the cleanup

13

request on Timothy at a status hearing without adequate prior notice, trespassing in the "curtilage" area of the Vuyaniches' yard, interfering with their private shed, permanently destroying or selling their property for a profit without keeping an inventory of the items sold or destroyed, and refusing to provide any compensation for the seized property—are traceable to Defendants alone. "When . . . a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker–Feldman* is not a bar to federal jurisdiction." *Great W. Mining*, 615 F.3d at 167; *see also Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 893 (6th Cir. 2020) (concluding *Rooker-Feldman* was inapplicable because the plaintiff's "injuries . . . did not arise from the [state court's] writs of garnishment by themselves," but rather from the defendants' "actions in tallying the amount of relief requested"); *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020) (holding that *Rooker-Feldman* did not bar jurisdiction because the plaintiff did not "seek[] redress for an injury caused by the state-court decision *itself* . . . but rather for injuries caused by the defendants' allegedly fraudulent conduct in prosecuting" the state court case against him) (internal citation omitted) (emphasis in original).

At bottom, any injuries the Vuyaniches may have suffered were caused by the Defendants, not the state court. Accordingly, Prong 2 of *Rooker-Feldman* does not apply.[7]

---

[7] The Vuyaniches urge us to adopt the Eleventh Circuit's position that "[a] claim about conduct occurring after a state court decision . . . cannot be barred under *Rooker–Feldman*." *Target Media Partners*, 881 F.3d at 1286. We decline to adopt any such blanket temporal rule. The timing of the plaintiff's injury is a "useful guidepost," *Great W. Mining*, 615 F.3d at

14

**B. Prong 4**

Even if Prong 2 were satisfied, *Rooker-Feldman* would still not bar jurisdiction because this case does not meet the requirements of Prong 4.  To refresh, that prong requires a plaintiff to "invit[e] the district court to review and reject [a] state judgment[]."[8]  *Great W. Mining*, 615 F.3d at 166.  The Vuyaniches did not invite the District Court to do so.

"When the plaintiff attempts to litigate previously litigated matters, the federal court has jurisdiction as long as the federal plaintiff presents some independent claim, even if that claim denies a legal conclusion reached by the state court." *In re Philadelphia Ent. & Dev. Partners*, 879 F.3d 492, 500 (3d Cir. 2018) (quoting *Great W. Mining*, 615 F.3d at 169) (internal quotation marks omitted).  "In other words, if the federal court's review does not concern 'the bona fides of the prior judgment,' the federal court 'is not conducting [prohibited] appellate review'" even if "the claim for relief if granted would as a practical matter undermine a valid state

_____

167, but that a plaintiff's injury is caused by conduct occurring after a state court decision is not on its own dispositive to the Prong 2 analysis.  It is easy to imagine scenarios in which this prong of *Rooker-Feldman* could be satisfied even when some of the conduct at issue took place after a state court decision— for example, when a state court explicitly ordered defendants to take the precise action that later gave rise to the plaintiff's claims, and the plaintiff asks the district court to vacate the state court judgment ordering that action.

[8] Again, we assume without deciding that the June 18, 2019 order was a "judgment."

15

court order." *Id.* at 500, 503 (quoting *Great W. Mining*, 615 F.3d at 169).

Here, the Vuyaniches have presented the requisite "independent claim[s]": they have challenged the Defendants' actions as unconstitutional and tortious. The District Court could have ruled on these claims without conducting appellate review of the June 18, 2019 order. For example, without reviewing or rejecting the state court order, that Court could have held unconstitutional the ordinance of the Borough ostensibly authorizing it to seize the Vuyaniches' property. *See Great W. Mining*, 615 F.3d at 168 (noting that declaring a statute unconstitutional would not "amount to appellate reversal or modification of a valid state court decree" relying on that statute). Similarly, without touching the underlying state court order, the District Court could have concluded the Borough carried out the clean-up in an unconstitutional or tortious way. It is of no consequence that these conclusions might, "as a practical matter[,] undermine" the efficacy of the state court order. *In re Philadelphia Ent.,* 879 F.3d at 503.

To be sure, the Vuyaniches' federal complaint asserts that the state court's order was "invalid." *See, e.g.*, App. at 39, 40, 57. But doing so remains insufficient, on its own, to trigger *Rooker-Feldman*. *Great W. Mining*, 615 F.3d at 171. The Vuyaniches are "not merely contending that the state-court decision[] w[as] incorrect or that [it was] in violation of the Constitution. Instead, [they] claim[] that people involved in the decision violated some independent right." *Id.* at 172 (internal quotation marks and citation omitted). And importantly, the Vuyaniches did not ask the District Court to overturn the June 18, 2019 state-court order, but rather sought damages for the actions Defendants took under the guise of

16

implementing that order. *See id.* at 173 ("[W]hile [plaintiff's] claim for damages may require review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be rejected or overruled for Great Western to prevail."). The complaint raises the alleged invalidity of the state court's order only to assert that the document does not provide "lawful justification" for Defendants' actions or a "legally permissible substitute for a warrant issued upon probable cause." App. at 57, 70. At most, the complaint contends that the state court order offers Defendants no legal safe harbor. But the Vuyaniches bring no direct challenge to the state court order itself.

In this respect, this case stands in stark contrast to the *Rooker* and *Feldman* decisions. In the former, the plaintiff asked the district court to declare a state court's judgment "null and void." 263 U.S. at 414. And in *Feldman*, parties who had unsuccessfully petitioned the District of Columbia's highest court to waive certain bar requirements "commenced a federal-court action against the very court that had rejected their applications." *Exxon-Mobil*, 544 U.S. at 283.[9] Unlike in those cases, the relief requested in our case—money damages for the Defendants' allegedly overzealous cleanup efforts—does not

_____

[9] Notably, even in the *Feldman* case itself, the Supreme Court declined to apply a jurisdictional bar to all of the plaintiffs' claims. Instead, it concluded that while the district court lacked subject-matter jurisdiction over the plaintiffs' challenge to the state court's specific application of the bar requirements, it retained jurisdiction to the extent plaintiffs "mounted a general challenge to the constitutionality of" the relevant bar requirements. *Feldman*, 460 U.S. at 483.

invite the District Court to review and reject a state court judgment.

### C. Prong 1

Although the failure to satisfy either Prong 2 or Prong 4 dooms Defendants' *Rooker-Feldman* argument, we also take the opportunity to recognize an abrogation of the law the District Court relied on to hold that Prong 1 bars Carol's claim.[10] Carol did not lose in state court; she was not even a party to the criminal proceeding against Timothy or to the state court's June 18, 2019 order. The District Court concluded this fact was irrelevant, relying on our decision in *Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004), which held that "*Rooker-Feldman* bars actions brought by parties in privity with the parties in the state action." *Id.* (citation omitted). Because Timothy and Carol own their property as joint tenants and had an apparently equal claim to the personal effects removed during the cleanup effort, the District Court concluded they were in privity and that *Rooker-Feldman* barred Carol's claims as well.

We disagree with that conclusion. Although the Court correctly characterized our decision in *Marran*, the Supreme Court partially abrogated that holding in *Lance v. Dennis* by concluding that "[t]he *Rooker–Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be

---

[10] Given our holding on the "key requirements" of *Rooker-Feldman* (Prongs 2 and 4), we need not otherwise analyze Prong 1 (with respect to Timothy) or Prong 3.

considered in privity with a party to the judgment." 546 U.S. at 466.

*Lance* governs here. To be sure, it left open the possibility that *Rooker-Feldman* might sometimes prevent federal claims from a party not named in an earlier state proceeding, like when an "estate takes a *de facto* appeal in a district court of an earlier state decision involving [a] decedent." *Id.* n.2. But *Rooker-Feldman* does not bar Carol's claim "simply because, for purposes of preclusion law, [she] could be considered in privity with" Timothy. *Id.*

## D. Alternative Bases for Dismissal

Defendants argue that even if *Rooker-Feldman* poses no bar to federal subject-matter jurisdiction, we should affirm dismissal of the case on an alternative ground: because the Vuyaniches' claims are barred by issue preclusion and under the doctrine articulated in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), which provides that a plaintiff may not recover damages under § 1983 if doing so would imply the invalidity of a prior conviction that has not otherwise been overturned. The District Court did not reach this alternative, and indeed Timothy was not convicted until after the District Court dismissed the case.

"We ordinarily decline to consider issues not decided by a district court, choosing instead to allow that court to consider them in the first instance." *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010). There is no reason to depart from that principle here. *See Skinner v. Switzer*, 562 U.S. 521, 533 n.11 (2011) ("[Q]uestions of preclusion unresolved below are 'best left for full airing and decision on

19

remand.'") (quoting *Lance*, 546 U.S. at 467 (Ginsburg, J., concurring)).

Although "all courts 'have an independent obligation to determine whether subject-matter jurisdiction exists,'" *Great W. Mining*, 615 F.3d at 163 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)), we need not address Defendants' alternative preclusion arguments in the first instance because preclusion "is not a jurisdictional matter," *Exxon Mobil*, 544 U.S. at 293. And as panels of our Court have stated in not precedential opinions, *Heck* does not present jurisdictional issues either. *See, e.g.*, *Ortiz v. New Jersey State Police*, 747 F. App'x 73, 77 (3d Cir. 2018); *Bolick v. Sacavage*, 617 F. App'x 175, 177 (3d Cir. 2015) (per curiam); *Reaves v. Pennsylvania Bd. of Prob. & Parole*, 580 F. App'x 49, 54 n.3 (3d Cir. 2014) (per curiam).

Importantly, the *Heck* decision contains no jurisdictional language. Instead, it holds that a "§ 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489–90; *see also Teagan v. City of McDonough*, 949 F.3d 670, 678 (11th Cir. 2020) (noting, in a dictum, that "the Supreme Court's own language suggests that *Heck* deprives the plaintiff of a cause of action—not that it deprives a court of jurisdiction"). Consistent with this approach, at least one of our sister circuits has treated *Heck* as an affirmative defense rather than a jurisdictional rule. *See Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999) ("The failure to plead the *Heck* defense in a timely fashion was a waiver[.]"); *but see O'Brien v. Town of Bellingham*, 943 F.3d 514, 529 (1st Cir. 2019) (stating, without analysis, that "[w]hether *Heck* bars § 1983 claims is a

20

jurisdictional question"). As the Ninth Circuit has opined, "compliance with *Heck* most closely resembles the mandatory administrative exhaustion of [Prison Litigation Reform Act] claims, which constitutes an affirmative defense and not a pleading requirement." *Washington v. Los Angeles Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016). We agree that *Heck* does not implicate a federal court's jurisdiction; thus there is no need to reach Defendants' *Heck* argument at this time. The District Court is free to consider it and Defendants' other alternative arguments for dismissal as appropriate on remand.[11]

\* \* \* \* \*

The Supreme Court has made clear that *Rooker-Feldman* is a limited doctrine that must not be applied outside of a precise, narrow set of circumstances. Those circumstances are not present here, and we therefore reverse the District Court's dismissal of the case and remand for further proceedings.

---

[11] We also deny the parties' motions to file a supplemental appendix and briefing on these alternative issues. We note the Vuyaniches already included in the joint appendix some of the documents supporting Timothy's state court conviction, even though it is well established that we consult materials outside the District Court record only in "exceptional circumstances." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 226 (3d Cir. 2009). Although we have taken judicial notice of Timothy's conviction, we have not otherwise considered these extra-record materials during this appeal.