NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1186
_____

MIDDLESEX WATER COMPANY,
                                        Appellant

v.

PENNSYLVANIA PUBLIC UTILITY COMMISSION;
GLADYS BROWN DUTRIEUILLE, Chairperson of the Pennsylvania Public
Utility Commission, in her official capacity; STEVEN M. DEFRANK, Vice Chairperson
of the Pennsylvania Public Commission, in his official capacity;
RALPH V. YANORA, Commissioner of the Pennsylvania Public
Utility Commission, in his official capacity; KATHRYN L. ZERFUSS, Commissioner on
the Pennsylvania Public Utility Commission, in her official capacity; JOHN F.
COLEMAN, Jr.; AQUA PENNSYLVANIA, INC.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-23-cv-00483)
District Judge: Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on November 5, 2024

Before: KRAUSE, SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: January 9, 2025)

———————————

OPINION[*]

———————————

**SCIRICA**, *Circuit Judge*

Middlesex Water Company challenges the dismissal of its constitutional claims against the Pennsylvania Public Utility Commission, its commissioners, and Aqua Pennsylvania. Because the District Court correctly determined Middlesex Water Company's claims were res judicata, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Appellant Middlesex Water Company ("Middlesex") is a New Jersey-based water utility company. On February 26, 2008, Middlesex sought a Certificate of Public Convenience ("CPC") from Pennsylvania Utility Commission ("PUC"), appellee, for a yet-to-be-created subsidiary, which Middlesex planned to use to acquire and operate a water system in Pike County. After it was awarded the CPC, Middlesex created Twin Lakes Utilities, Inc. ("Twin Lakes") to run the system.

All parties agree the system was in distress by 2020 and Twin Lakes was struggling

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

financially. Twin Lakes filed a petition with PUC under 66 Pa. Cons. Stat. § 529 (2019), requesting PUC order a "capable public utility to acquire" the Twin Lakes system, *id.* § 529(a). In a Pennsylvania state administrative proceeding, an Administrative Law Judge ("ALJ") recommended the petition be granted and appellee Aqua Pennsylvania, Inc. ("Aqua") acquire the system. But the ALJ conditioned the acquisition on Middlesex placing $1.675 million into escrow "to offset the costs of replacing and remediating the existing infrastructure." App. 52. PUC adopted the ALJ's recommendation in a final order on November 18, 2021. During the administrative proceedings, Twin Lakes raised constitutional objections to the escrow requirement on Middlesex's behalf.

Days later, Twin Lakes challenged the PUC order in Pennsylvania Commonwealth Court, once more raising the constitutional challenges it presented before PUC. The Commonwealth Court ultimately upheld PUC's order, finding PUC had jurisdiction over Middlesex to impose the escrow condition and was within its statutory authority to do so. *Twin Lakes Utils., Inc. v. Pa. Pub. Util. Comm'n*, 281 A.3d 384 (Pa. Commw. Ct. 2022), *appeal denied*, 293 A.3d 566 (Pa. 2023). Twin Lakes appealed, and the Supreme Court of Pennsylvania denied review. *Id.*

Middlesex then sued PUC in the Middle District of Pennsylvania, arguing it was "left with only the federal courts as a bulwark against" PUC's allegedly unconstitutional behavior. App. 77. Middlesex raised the same constitutional objections Twin Lakes asserted in the PUC and Commonwealth Court proceedings (and several new ones), arguing the imposition of the escrow condition violated the Due Process Clause, Equal Protection Clause, Dormant Commerce Clause, Takings Clause, and doctrine of

3

unconstitutional conditions. The District Court permitted Aqua to intervene as a defendant and granted defendants' motions to dismiss, holding Middlesex was claim-precluded by Twin Lakes' prior claims, or alternatively, Middlesex was issue-precluded on its Due Process, Takings, and unconstitutional conditions claims, and its remaining claims failed on the merits. *Middlesex Water Co. v. Pa. Pub. Util. Comm'n*, No. 23-CV-483, 2024 WL 199558, at *3–6 (M.D. Pa. Jan. 18, 2024).

On appeal, Middlesex challenges the District Court's dismissal of its complaint in its entirety on claim preclusion grounds, and its alternative dismissal of its complaint on combined issue preclusion and merits grounds.

II.[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

Aqua argues the court lacked subject-matter jurisdiction over Middlesex's claims under the *Rooker-Feldman* doctrine. *Vuyanich v. Smithton Borough*, 5 F.4th 379, 384 (3d Cir. 2021). The *Rooker-Feldman* doctrine occupies "narrow ground" and "is confined to cases of the kind from which [it] acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Application of the doctrine requires four conditions: (1) the federal plaintiff lost in state court; (2) the plaintiff's injury is caused by the state court judgment; (3) that judgment was rendered before the commencement of the federal action; and (4) the plaintiff asks the district court to review and reject the state judgment. *See Vuyanich*, 5 F.4th at 385. *Rooker-Feldman* does not apply here because Middlesex's injury was not caused by the state court judgment. To strip us of jurisdiction, "the plaintiff's injury must actually be produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Vuyanich*, 5 F.4th at 385 (quotation omitted). Here, Middlesex's asserted injury—the escrow condition—spawns from PUC's order, not the Commonwealth Court judgment. That alone is sufficient not to apply *Rooker-Feldman*. *See Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 173 (3d Cir. 2010) ("The fact that Defendants' actions, rather than the state-court judgments, were the source of [Plaintiff's] injuries is alone

4

We review the District Court's grant of a motion to dismiss *de novo* and accept the facts alleged in the complaint and reasonable inferences drawn from them as true. *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011).

To trigger claim preclusion in Pennsylvania,[2] the "two actions must share an identity of the (1) thing sued on; (2) cause of action; (3) persons and parties to the action; and (4) quality or capacity of the parties suing or sued." *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988). Middlesex concedes (1) and (4), but contests (2) and (3).

III.

Middlesex argues the causes of action are not identical. But neither the new arguments they raise nor the new remedies they seek make their claims a different cause of action than their claims in the Twin Lakes case. Pennsylvania's cause of action test is transactional, and both actions concerned the escrow condition—the same transaction. *See Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006) ("Turner's present action and the prior state-court litigation originated from the same cause of action, inasmuch as they are based on the same allegedly wrongful acts. . . . [A]djudicating Turner's new theory of recovery would require the parties to 'rehash' the

---

sufficient to make *Rooker–Feldman* inapplicable here."). As such, the District Court properly exercised subject-matter jurisdiction over Middlesex's claims.

[2] We apply Pennsylvania's claim preclusion law in determining the preclusive effect of a Pennsylvania proceeding. *Marrese v. Am. Acad. Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) ("[The federal full faith and credit] statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered."). We must "rule as [we] predict the state supreme court would." *Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 467 (3d Cir. 2024) (citation omitted).

facts and legal arguments raised before the court of common pleas."); *Middlesex Water Co.*, 2024 WL 199558, at *3.

Both in the PUC proceeding and in the Commonwealth Court, Twin Lakes raised constitutional arguments concerning the escrow condition imposed on Middlesex. And both tribunals had the opportunity to consider the constitutionality of the condition and grant relief by invalidating it. Accordingly, "because . . . there was no jurisdictional obstacle to the [constitutional] claims being litigated in state court" and the "underlying events giving rise to the various legal claims are identical," we may find Middlesex's claims to be the same "cause of action" as Twin Lakes' claims notwithstanding the availability of particular remedies. *Turner*, 449 F.3d at 549, 550 (citation omitted).

IV.

The next issue is (3)—whether Middlesex and Twin Lakes are in privity. We conclude they are. Pennsylvania law is clear that claim preclusion "should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose," namely "a second trial on the same cause between the same parties." *Stevenson v. Silverman*, 208 A.2d 786, 788 (Pa. 1965) (citation omitted) (internal quotation marks omitted). Pennsylvania law recognizes that privity between two parties may give rise to claim preclusion. *See Sec'y U.S. Dep't of Lab. v. Kwasny*, 853 F.3d 87, 94-95 (3d Cir. 2017) ("Under Pennsylvania law, claim preclusion requires privity between the parties . . . . [P]rivity is a 'mutual or successive relationship[] to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.'" (citations omitted)); *Stevenson*, 208 A.2d at 788 ("The doctrine of res

6

judicata applies to and is binding, not only on actual parties to the litigation, but also to those who are in privity with them. A final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or *their privies* on the same cause of action."); *Turner*, 449 F.3d at 548 n.11 (3d Cir. 2006) ("Indeed, Pennsylvania courts apply the doctrine of res judicata to different parties where one is vicariously responsible for the conduct of another." (citations omitted)).

We find, within the four corners of Middlesex's complaint, any differences between Middlesex and Twin Lakes are sufficiently minor that a Pennsylvania court would find Middlesex claim-precluded. Middlesex's complaint establishes that they are the "*sole source of financial and operational support* to Twin Lakes," App. 42 (emphasis added), and Middlesex operated Twin Lakes "as a wholly-owned . . . subsidiary," App. 37. Indeed, in its complaint, Middlesex concedes its officers were also officers of Twin Lakes and appeared as witnesses in the § 529 proceeding—Middlesex disputes only the capacity in which they appeared. *See* App. 55 ("PUC noted that 'the appearance in this Section 529 proceeding as witnesses by corporate officers of Middlesex, may itself constitute consent to Commission jurisdiction[,]' . . . [but] PUC failed to acknowledge that those witnesses did *not* appear in their capacity as corporate officers of Middlesex. Instead, they appeared in their capacity as corporate officers of Twin Lakes." (citation omitted)). Accordingly, Middlesex's assertions that affirming will mean "Middlesex will never have an opportunity to be heard with respect to the escrow requirement" and "received no notice"—particularly given Twin Lakes contested the escrow requirement at prior junctures—are at odds with the facts alleged in the complaint, which evince a particularly close corporate relationship

7

between Middlesex and Twin Lakes and the personal involvement of Middlesex officers in the state proceedings. Appellant's Br. 17–18.

Given the degree of privity between Middlesex and Twin Lakes evident on the face of Middlesex's complaint, we believe a Pennsylvania court would find the difference in parties sufficiently minor under *Stevenson* because Middlesex's interests are identified with Twin Lakes'. And it is clear Twin Lakes "represent[ed] the same legal right" as Middlesex asserts, *Kwasny*, 853 F.3d at 95 (citation omitted) (internal quotation marks omitted)—that is, the right of *Middlesex* to be free from the PUC escrow condition, because Twin Lakes raised constitutional claims on *Middlesex's behalf* in the prior proceedings.

While not binding, precedent concerning the law of other states (including from this Circuit) also instructs that a sufficiently close relationship between a parent and wholly owned subsidiary, with other indicia, can establish privity.[3] *See, e.g.*, *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991) ("For purposes of claim preclusion in this case [applying New Jersey law], there is a close and significant relationship between Exxon and Exxon Research. Exxon Research is a wholly owned affiliate of Exxon, was a defendant in the initial . . . action, and was a signatory to the Settlement Agreement." (citation omitted)); *NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1183 (9th Cir. 2019)

---

[3] There is also support for this view in secondary sources. *See, e.g.*, 46 Am. Jur. 2d Judgments § 597 ("[S]ome courts have found that privity exists between a parent corporation and its wholly owned subsidiaries . . . . Preclusion is particularly appropriate if a parent controlled the litigation against a subsidiary, or brought or defended an action for the benefit of the subsidiary. Other courts have found that . . . participation or control . . . is needed." (citations omitted)).

8

("[P]rivity exists between ZTE Corp. and ZTE USA, ZTE Corp.'s wholly-owned U.S. subsidiary . . . Florida treats parent corporations and subsidiaries as privies for purposes of preclusion." (citations omitted)); *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 162 (1st Cir. 2000) ("We do not suggest that the parent-subsidiary relationship automatically establishes privity, but given the relationship of the companies in this case coupled with their joint involvement . . . we have little doubt that a Rhode Island court would treat a merits judgment in favor of Urohealth as resolving an *identical claim against its wholly owned subsidiary*." (emphasis added)). These cases rest on *weaker* corporate relationships than what Middlesex's complaint makes clear about the relationship between Middlesex and Twin Lakes—none note an identity of officers between parent and subsidiary with officers of both corporations participating at the first proceeding, for example, or complete financial control of the subsidiary by the parent. We need not hold every subsidiary is in privity with a parent to note the degree of privity presented by the circumstances here.

The District Court reached the same conclusion by looking beyond the complaint, finding the record from the Commonwealth Court proceedings over the propriety of the escrow condition clearly established any "differences of form [or] parties" between Middlesex and Twin Lakes are "minor," *Stevenson*, 208 A.2d at 788, and that Middlesex and Twin Lakes are in privity. *Middlesex Water Co.*, 2024 WL 199558, at *3–4; *see Twin Lakes Utils., Inc.*, 281 A.3d at 390 ("There is little doubt that Middlesex and Twin Lakes are closely related, sharing many of the same corporate officers, the same general counsel, and the same business address. Middlesex is the sole source of capital[,] . . . . provides the services to Twin Lakes' customers[,] . . . . [and] makes the managerial decisions for Twin

9

Lakes."); *id.* at 396 ("Middlesex effectively initiated the instant Section 529 proceeding."). The administrative record supports the same conclusion. *See* App. 122 ("[T]he corporate officers, witnesses, and even legal counsel representing Twin Lakes, are the same corporate officers, witnesses, and legal counsel for Middlesex."). These findings further prove privity between Middlesex and Twin Lakes, particularly considering our above analysis of the complaint, and indicate Middlesex directed the prior proceeding.

Middlesex argues the court could not take notice of *findings of fact* in the Commonwealth Court as early as the motion to dismiss, though it could take notice of the prior case itself. Appellant's Br. 23 (arguing "[o]n a motion to dismiss, Courts may not take judicial notice of another court's opinion 'for the truth of the facts recited therein,'" and could only properly do so on summary judgment (citations omitted)). However, we previously held "[u]nder either motion" (*i.e.*, a motion to dismiss or motion for summary judgment), district courts "ha[ve] to examine the record of the prior . . . proceeding" and are "entitled to take judicial notice" thereof "in rendering [their] decision[s], regardless of the motion employed." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988). In any case, we can and will affirm on the basis of Middlesex's complaint without opening that record.

Because Middlesex's claims must be dismissed as res judicata, we need not reach issue preclusion or the merits of Middlesex's constitutional challenges to the escrow condition to affirm.

V.

For the foregoing reasons, we will affirm.

10