**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-2426

———————

UMOJA ERECTORS, LLC,
Appellant

v.

D.A. NOLT, INC.; NORTH AMERICAN SPECIALTY INSURANCE COMPANY

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-05046)
District Judges: Honorable Gene E.K. Pratter and Honorable Mitchell S. Goldberg

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 19, 2025

———————

Before:  PHIPPS, CHUNG, and ROTH, *Circuit Judges*

(Filed: October 23, 2025)

———————

OPINION*

———————

PHIPPS, *Circuit Judge*.

After a subcontractor for a municipal construction project performed substandard work, the general contractor did not pay the subcontractor for that work and recouped its costs associated with corrective work by withholding payment for other work. The subcontractor then sued the general contractor in federal court, and after a bench trial, the

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

court entered a judgment in favor of the general contractor. The subcontractor unsuccessfully moved under Rule 59(e) to alter the judgment, and it now appeals the judgment and the denial of that motion. Reviewing the District Court's legal conclusions *de novo* and its factual findings for clear error,[1] we will, for the reasons below, affirm the rulings of the District Court.

## BACKGROUND

In March 2012, the City of Philadelphia announced that its police headquarters would relocate to the Public Safety Services Campus in West Philadelphia. *See Umoja Erectors, LLC v. D.A. Nolt, Inc.*, 2024 WL 3635670, at *2 (E.D. Pa. Feb. 15, 2024). For that campus to accommodate the police headquarters, there would have to be extensive renovations, including asbestos abatement; masonry and plumbing work; replacement of doors, windows, and roofing; and the erection of new structural steel. To oversee those renovations for completion by December 16, 2016, the City, in August 2015, awarded a general construction prime contract in the amount of approximately $13.5 million to D.A. Nolt, Inc., a New Jersey corporation with its principal place of business in that state. *See id.*

The terms of that contract included the Standard Contract Requirements, or 'SCRs' as they may be abbreviated, for the City of Philadelphia. One of those SCRs was a defective work clause, which governed work rejected by a Project Manager:

> The Contractor shall remove, at its own expense, any work or material rejected by the Project Manager as unsuitable, unfit, or otherwise defective and not in accordance with the Contract Documents, and shall repair, replace or reconstruct the same without additional compensation.

---

[1] *See United States v. U.S. Sugar Corp.*, 73 F.4th 197, 203 (3d Cir. 2023); *Vuyanich v. Smithton Borough*, 5 F.4th 379, 384 n.4 (3d Cir. 2021).

City of Philadelphia Standard Contract Requirements for Public Works Contracts § E.66 (Jan. 22, 2015) (App. 1043). The SCRs defined 'Project Manager' as the person designated as such by the City or "any other individual who may be designated in writing by the Project Manager as his or her representative." *Id.* § A.1.jj (App. 1016).

For the steel work, Nolt subcontracted in June 2016 with a limited liability company, Umoja Erectors, which had two members, both of whom were natural persons and citizens of Pennsylvania. *See Umoja Erectors*, 2024 WL 3635670, at *2. In terms of compensation, the subcontract was primarily a time-and-materials agreement: Umoja would be reimbursed for labor at contractually defined hourly rates and for most materials at cost. In addition, the parties agreed to a $30,000 'coordination fee' to compensate Umoja for its efforts managing and coordinating the steel work. *See id.* at *3.

Beyond those terms governing the scope of work and compensation, the subcontract also included a role for the SCRs. *See id.* Specifically, it contained a clause binding the subcontractor to the contractor "by the same terms and conditions by which Contractor is bound to the [City] under the Contract." D.A. Nolt-Umoja Subcontract Art. 2.1 (App. 737); *see also id.* Ex. B (App. 760) (enumerating "City of Philadelphia Standard Contract Requirements" as one of the "Contract Documents").

In the second half of 2016 and early 2017, numerous problems were identified with the steel work, including issues with the steel having been improperly cut or welded. *See Umoja Erectors*, 2024 WL 3635670, at *3–5. Some of those errors could be rectified on the spot; others required that the steel be removed and shipped back to the fabricator for reworking. *See id.* at *4–5. All of those mistakes took extra time, and by the project's scheduled completion date of December 16, 2016, the City estimated that the steel work was about 90% complete. *See id.* at *5. That delay prompted the City to withhold payment

3

to Nolt and to threaten to seek liquidated damages in the amount of $10,000 per day for the costs associated with the delay. Also, because the steel work for a roof for the project was not timely completed, Nolt had to install a temporary roof in January 2017. *See id.*

In a letter dated February 10, 2017, Nolt's Vice President, Rich O'Brien, who later testified at trial that he was the Project Manager for purposes of the subcontract, informed Umoja of the potential consequences of the City's position. *Cf. id.* at *2. Nolt would not pay Umoja for the redone work caused by the fabrication or erection errors. *Cf. id.* at *1. Nolt would charge Umoja for any additional costs that it incurred due to the redone work. And Nolt would seek compensation from Umoja for any liquidated damages that the City charged it.

Ultimately, Umoja completed the steel work in March 2017. *See id.* at *1. Umoja submitted invoices in the amount of $299,054.23 for its work performed. Nolt paid Umoja $26,375.52 on those invoices, and then in a letter from O'Brien, refused to pay the remainder on the grounds that the charges were for corrective rework and thus not compensable under the subcontract. *See id.* And to recoup its costs associated with the delay, Nolt paid Umoja only $9,262 of the $30,000 coordination fee. *See id.* at *9.

In 2020, Umoja invoked the diversity jurisdiction of the District Court, *see* 28 U.S.C. § 1332(a)(1), to sue Nolt for breach of contract, unjust enrichment, and violation of Pennsylvania's Prompt Pay Act, 62 Pa. Cons. Stat. §§ 3931–39. During the pendency of this suit between Umoja and Nolt, the City settled with Nolt and paid Nolt the amounts it had been withholding. *See Umoja Erectors*, 2024 WL 3635670, at *1. The dispute between Umoja and Nolt did not settle, but instead proceeded to a four-day bench trial in January and February 2023.

After that bench trial, the District Court entered judgment for Nolt. It determined that Nolt was "not obligated to pay any charges or invoices for corrective, repair, or redone work." *Id.* at *7. It also found that the unpaid invoices lacked "reasonable certainty" because they did "not distinguish between corrective work and noncorrective work." *Id.* And with respect to the coordination fee, the District Court determined that Nolt was entitled to recoup the unpaid portion of that fee to offset the costs it incurred as a result of Umoja's defective work. *Id.* at *9. Umoja filed a Rule 59(e) motion to alter that judgment, and the District Court denied that motion. *Umoja Erectors, LLC v. D.A. Nolt, Inc.*, 2024 WL 3635669, at *1–2 (E.D. Pa. July 16, 2024).

Through a timely notice of appeal filed fifteen days after the denial of its Rule 59(e) motion, *see* Fed. R. App. P. 4(a)(1)(A), (a)(4)(A)(iv), Umoja invoked this Court's appellate jurisdiction over those rulings, *see* 28 U.S.C. § 1291.

## DISCUSSION

Umoja now challenges the District Court's conclusions related to the unpaid invoices and Nolt's recoupment of the coordination fee. With respect to the unpaid invoices, Umoja argues that the District Court erred in three respects. First, Umoja asserts that the District Court neglected that the subcontract was for time and materials, such that Umoja should be compensated for all time and materials, including corrective work. Second, Umoja contends that the District Court incorrectly validated Nolt's rejection of Umoja's work because the City's Project Manager did not reject the steel work. Third, Umoja argues that the District Court erred in upholding the non-payment of the outstanding invoices on the grounds that they were not reasonably certain. Umoja also contests the District Court's conclusion that Nolt could recoup the costs associated with delay and

5

corrective work from the coordination fee on the grounds that those costs were unrelated to the work performed to earn the coordination fee.

## A. The Challenges to the Non-Payment of the Invoices

Umoja's primary contention is that because the contract was a time-and-materials agreement, it was entitled to payment of its invoices for corrective work. The problem for Umoja is that its position does not account for the defective work clause in the SCRs. The District Court considered the time-and-materials provisions as well as the defective work clause and determined that they operate in tandem, rather than in tension. *See Umoja Erectors*, 2024 WL 3635670, at *6–7. And its conclusion that the obligation in the defective work clause to "repair, replace or reconstruct" defective work "without additional compensation" forecloses payment for defective work is consistent with the plain meaning of the unambiguous subcontract provisions. *Id.* at *3, *7 (quoting SCRs § E.66 (Jan. 22, 2015) (App. 1043)).

Umoja also challenges the District Court's factual finding that Nolt had the authority to reject substandard steel work. Umoja argues, based on factual findings in a different case about the Public Safety Services Campus, that the City Project Manager was Pedro Pinto and that only he had the authority to reject its work as defective. But Umoja did not present evidence to that effect, and the District Court found that O'Brien was the Project Manager based on O'Brien's testimony that he acted as "Project Executive/Project Manager." Day 2 Trial Tr. 28:20–22 (App. 447); *see Umoja Erectors*, 2024 WL 3635670, at *2. On clear error review, that is enough to avoid a definite and firm conviction that the District Court erred in finding that O'Brien was the Project Manager. *Cf. Skolnick v. Comm'r of Internal Revenue*, 62 F.4th 95, 102 (3d Cir. 2023) ("[W]e affirm the court's finding so long as it is 'plausible'; we reverse only when 'left with the definite and firm

6

conviction that a mistake has been committed.'" (quoting *Cooper v. Harris*, 581 U.S. 285, 309, (2017))); SCRs § A.1.jj (App. 1016) (allowing the City Project Manager to delegate his authority).

Umoja additionally disputes the District Court's factual finding that the unpaid invoices were not reasonably certain. Umoja contends that its invoices were reasonably certain because they identified the hours worked by individual ironworkers, the project locus of their work, and the rate of pay for each class of worker. In the absence of corrective work, those invoices may have met the reasonable certainty standard, but as explained above, Umoja was not entitled to payment for corrective work, and Umoja's invoices did not separately itemize corrective work and non-corrective work. *See Umoja Erectors*, 2024 WL 3635670, at *7. Nor did Umoja provide a means of distinguishing between its corrective and non-corrective work – such as a legend explaining that certain ironworkers performed only corrective work, or that only work performed at certain locations was corrective. *Cf. id.* Without providing a means to distinguish between corrective and non-corrective work, it was not error for the District Court to deny damages associated with the unpaid invoices for a lack of reasonable certainty. *Cf. Wilcox v. Regester*, 207 A.2d 817, 822 (Pa. 1965) ("In seeking damages for breach of contract, a party must be able to prove such damages with reasonable certainty.").

**B. The Challenge to Nolt's Recoupment of a Portion of the Coordination Fee**

Umoja also contests the District Court's conclusion that Nolt could recoup costs associated with the delay and substandard work from the unpaid portion of the coordination fee. According to Umoja, for Nolt to recoup those costs, they had to have been related to the same transaction or occurrence as the coordination fee, and the charges Nolt made – for things like portable toilets – were not related to Umoja's management and coordination

7

of steel work. But Umoja advocates for a greater nexus between the costs recouped and the payment obligation than is required under Pennsylvania law, which allows for recoupment to offset claims related to the same contract, not just the same transaction. *See Nw. Nat'l Bank v. Commonwealth*, 27 A.2d 20, 25 n.3 (Pa. 1942) (explaining that a defense of recoupment "aris[es] out of the contract sued upon"). And the District Court did not clearly err in concluding that Nolt's claim for the coordination fee and Umoja's claim for recovery arose from the same subcontract. *See Umoja Erectors*, 2024 WL 3635670, at \*9.

## CONCLUSION

For these reasons, we will affirm the judgment of the District Court.